GEORGIA THOMASON v. CHILTON W. ALLEN ET AL., Appellants.—26 S. W. (2d) 609.

Division One, April 2, 1930.

*Daniel H. Frost* and *Erasmus C. Hall* for appellants.

*L. W. Thomason, Mosman, Rogers & Buzard* and *Don E. Black* for respondent.

1064

GANTT, J.—Suit to set aside an alleged fraudulent conveyance of lot seventeen in Eden, Jackson County, by Katherine DeMoss and E. M. DeMoss, her husband, to Chilton W. Allen and Marie Allen, his wife, and to quiet the title. Judgment for plaintiff, and defendants appealed.

It is alleged that prior to October 23, 1920, plaintiff was the owner of "certain obligations" of defendants Katherine and E. M. DeMoss; that on said date the DeMosses, with intent to defraud plaintiff, conveyed the lot to the Allens without consideration; that thereafter plaintiff obtained judgment against the DeMosses on the "obligations," and on execution the lot was sold by the sheriff to plaintiff; that the Allens claim to own the lot by virtue of a deed of the DeMosses conveying to them the lot on October 23, 1920, and plaintiff prayed for cancellation of the deed to the Allens and determination of the interests of the parties.

The Allens answered by denying generally the allegations of the petition, and alleged they were the owners of the lot; that it was conveyed to them for a valuable consideration; that the judgment on the "obligations" against the DeMosses is void because plaintiff was not the owner of the "obligations," and prayed "to be dismissed and to recover of plaintiff their costs in this behalf expended."

The answer of the DeMosses was a general denial. No reply was filed, but trial was had as if the reply were a general denial.

On December 29, 1915, John E. Frost signed as surety for the DeMosses a note for $2220.44 payable to a bank. Frost paid the note which was indorsed to him without recourse. He died October 10, 1920, the owner of the note, and plaintiff, his widow and administratrix, listed the note as an asset of the estate, but it was considered of no value. The widow married L. W. Thomason, and on September 6, 1924, filed suit against the DeMosses on the note, and Eden lot seventeen was attached as the property of the DeMosses, who then resided in Oklahoma. Service was had by publication. On November 29, 1924, judgment was rendered sustaining the attachment and adjudging the DeMosses indebted to plaintiff in the sum of $3606.53 with costs. Special execution was issued, and on July 17, 1925, the sheriff sold the lot. Plaintiff being the purchaser, the sheriff made conveyance to her. Plaintiff's claim of ownership rests on the sheriff's deed.

Defendant Chilton W. Allen is a brother of Katherine DeMoss. The families resided in Kansas City, Missouri, in 1914. The Allens lived at 311 Bellefontaine in property belonging to Katherine DeMoss, and paid her a rental of $35 per month. They testified that Chilton W. Allen inherited $950 from an aunt and used the money to pay a debt secured by a second deed of trust on the Bellefontaine property; that they also paid taxes and interest on the first mortgage debt on the Bellefontaine property, and that for these payments Mrs. DeMoss in 1914 conveyed to them the Bellefontaine property and the Eden lot; that after the DeMosses and the Allens moved to Oklahoma, and in 1917, Mr. DeMoss was arrested; that thereupon and at the instance of Mrs. DeMoss, they conveyed Eden lot to a Mr. Ewing to secure him as bondsman for DeMoss; that upon satisfaction of the bond, and in 1919, Ewing conveyed the lot to Mrs. DeMoss, who continued to hold the title until thirteen days after the death of John E. Frost, when she again conveyed the lot to the Allens. Thus it appears the Allens claim to be the owners of the lot from the time of the first conveyance in 1914, although in their answer it is alleged they are the owners of the lot by virtue of the conveyance of October 23, 1920.

I. Defendants contend the conveyance was not fraudulent. This calls for a consideration of the evidence. The Allens claim to have paid taxes and insurance on the Bellefontaine property and the debt secured by a second mortgage on said property. The claim rests solely on their testimony, for the persons to whom such payments would be made were not produced as witnesses, and no checks or receipts were produced, although

they testified receipts were given to them. They also claim to have paid interest for the years 1914, 1915, 1916, 1917 and 1918 on the debt secured by the first mortgage on said property. However, they also failed to produce as witnesses the persons to whom such payments would be made, and produced no checks or receipts evidencing such payments, although they testified receipts were given to them. They testified to conveying the Bellefontaine property to a Mr. Miller on July 8, 1916, although they claim to have paid interest on the first mortgage for 1917 and 1918, which would be two years after they ceased to be owners of the property.

Katherine DeMoss tells a different story. She testified that she conveyed the Bellefontaine property and the Eden lot to the Allens in 1914 to beat a doctor's bill amounting to $50. And the Allens claim that the properties were deeded to them in 1914 in consideration of payment of the debt secured by a second mortgage on the Bellefontaine property, although the second mortgage debt was not paid until 1916. This conclusively shows the properties were conveyed to the Allens in 1914 for the reason stated by Katherine DeMoss. Moreover, the Allens did not conduct themselves as owners of the properties. They continued to pay rent for the Bellefontaine property to Mrs. DeMoss after the conveyance of 1914, and after the Allens moved to Oklahoma Mrs. DeMoss continued to collect the rent from others. They paid no interest on the debt against Eden lot and gave no attention to a renewal of the debt and mortgage on the lot. These matters were left to Mrs. DeMoss, who attended to them. They were not familiar with Eden lot, exercised no acts of ownership over it, and their testimony about the transactions with reference to the properties is wholly unsatisfactory. These properties were the only real estate owned by Mrs. DeMoss. She lost the Bellefontaine property by foreclosure of the first mortgage, and it is clear that she was insolvent at the time of these conveyances. When her husband was under arrest, the lot was, at her instance, conveyed by the Allens to the bondsman, who later conveyed it to Mrs. DeMoss. At that time her uncle, John E. Frost, was living. On October 10, 1920, Frost died, and Mrs. DeMoss knew she would be called upon to pay the note. In this situation she again conveyed the lot to the Allens without consideration. It is clear that she did so for the purpose of defrauding said estate.

II. Defendants contend it was error to admit in evidence the judgment in the attachment suit as "evidence of debt." Citing Section 1762, Revised Statutes 1919, which follows:

"*Judgment upon constructive service, effect of.*—Such judgment shall bind only the property and effects attached, and no execution shall issue against any other property of the defendant;

nor shall such judgment be any evidence of debt against the defendant in any subsequent suit.''

We do not understand defendants' application of the section to the facts of this case. The judgment and the record of the proceedings in the attachment suit were not admitted as evidence of debt against the defendants. The judgment, sheriff's deed and the record of the other proceedings in that case are evidence of debt against the lot attached, and were admitted in evidence as tending to show title in plaintiff.

III. Defendants contend that plaintiff was not the owner of the note sued on by attachment, for the reason the note was transferred to her without an order of the probate court. There is no evidence in the record tending to show that the transfer was made without an order of court. The evidence does show that the note was considered of no value, and that it was not charged to the plaintiff as administratrix of the estate of John E. Frost in any of her settlements. The court may have ordered it transferred to her on distribution. In any event, the court had jurisdiction of the parties and the subject-matter in the attachment suit. Therefore, the ownership of the note, so far as the lot in question is concerned, was fixed by the judgment in that case.

IV. Defendants contend there were irregularities in the attachment proceedings. The record in the instant case discloses none. But even so, the judgment, so far as the lot is concerned, is conclusive against mere irregularities and cannot be attacked collaterally.

The judgment should be affirmed, and it is so ordered. All concur