HYMAN SPITCAUFSKY, BERTHA SPITCAUFSKY; W. R. BUCHANAN; THE MUNICIPAL BOND CORPORATION; HEIM & OVERLY REALTY COMPANY, a Corporation for Themselves and Others Similarly Situated Who May Intervene Herein and Adopt the Allegations of this Petition, v. ALVIN D. HATTEN, County Collector of Jackson County, Missouri; JOHN F. THICE, Attorney for ALVIN D. HATTEN, County Collector; TRUSTON W. KIRBY, Treasurer of Jackson County, Missouri; BEN NORDBERG, County Clerk of Jackson County, Missouri; COUNTY COURT OF JACKSON COUNTY, MISSOURI; WILSON D. BELL, Treasurer of the State of Missouri; KANSAS CITY, a Municipal Corporation; L. P. COOKINGHAM, City Manager of Kansas City, HORACE R. McMORRIS, Director of Finance of Kansas City, Missouri; H. J. GORMAN, Treasurer of Kansas City; JOHN Z. STERRETT, Assessor of Kansas City, Missouri; BOARD OF EDUCATION OF KANSAS CITY, MISSOURI, Appellants.—No. 39105. —182 S. W. (2d) 86.

Court en Banc, July 31, 1944.

Rehearing Denied, August 16, 1944.

Motion to Modify Opinion Sustained, September 5, 1944.

*George K. Brasher,* County Counselor, *J. Marcus Kirtley,* Assistant County Counselor, *John F. Thice, William E. Kemp,* City Counselor, *Benj. M. Powers,* Assistant City Counselor, and *Jerome M. Joffee,* Special Assistant City Counselor, for appellants.

98

100

*Dwight M. Smith* for respondents.

104

*Blatchford Downing* and *Caldwell, Downing, Noble & Garrity* *amicus curiae.*

ELLISON, J.—This appealed case is a class suit for a declaratory judgment. The plaintiffs-respondents own a large number of special tax liens on real estate in Kansas City. The defendants-appellants include the taxing authorities of Jackson County and Kansas City, the County and City. Respondents' 70 page petition in some 30 odd assignments challenges on various grounds the constitutionality of the "Land Tax Collection Act," Laws Mo., 1943, p. 1029, containing 52 sections. No questions are raised concerning the levy or assessment of taxes. All the allegations of fact in the petition were admitted in the answers. The trial court sustained all of respondents' contentions, adjudging the Act null and void in its entirety.

In outline the Act provides for the foreclosure by the County Collector of Revenue of *all* delinquent general and special State, county, municipal and school district tax liens on real estate when any of them are at least four years old, in counties now or hereafter having 400,000 to 700,000 inhabitants, by one or more equitable actions in rem tried in the circuit court. All subordinate taxing authorities *must* file their delinquent land tax lists with the County Collector for that purpose and private owners of tax liens, such as tax bills, certificates of purchase and deeds *may* do so. The Collector compiles these lists with his own and the whole, with an added caption and prayer, constitutes the petition.

The service process is a notice by publication addressed solely to the lands and naming no personal defendants. No personal judgment can be rendered. The decree vests a fee simple title in the purchaser at the foreclosure sale, and orders disbursement of the sale proceeds. Parties claiming any right, title or interest in or lien upon any of the delinquent tracts may answer or intervene, and have

their rights adjudicated inter sese and against the taxing authorities. Any pending tax foreclosure suits against the same lands *must* be consolidated with the Collector's suit. The Act fixes the priorities of the several classes of tax liens. It further creates a Land Trust to bid in lands not selling for the full amount of general taxes, and to handle, sell and trade the same for the holders of delinquent tax liens thereagainst, as beneficiaries.

The main objectives of the legislation are summarily to foreclose long standing tax delinquencies on real estate, and to convey a marketable title by judicial decree, excluding any right of redemption and collateral attack. Appellants say in their reply brief that if the Act does not make those objectives attainable it will have failed of its purpose. If none of the taxes are delinquent as much as four years the regular procedure set out in Art. 22, Chap. 74 of our statutes[1] must be followed. Jackson County is the only county in the State at present coming within the above population brackets. There are some 25,000 or 30,000 parcels of land in the county which are tax delinquent for four years or more. The appellant County Collector purposes to sue under the Act for the foreclosure of these taxes in 25 or 30 suits, including about 1000 parcels of land in each suit.

In logical order, respondents' first assignment is the specific contention that the whole Act is void because the title and contents cover more than one subject, in violation of Sec. 28, Art. IV of the Missouri Constitution. The title is detailed and blankets the text. Respondents assert that both cover at least four subjects: (a) the foreclosure, redemption and sale of tax delinquent lands; (b) substantive priority of tax liens; (c) adjudication of the rights, titles, interests, liens and priorities of private and public claimants in the land, inter sese; (d) creation of a Land Trust to bid in lands bringing less than the full amount of general taxes, and to manage, sell and traffic therein. They urge that only the first of these subjects is properly within the scope of such legislation. Appellants maintain all are germane to the subject of tax foreclosure. We must reserve discussion of this question until we have considered the other issues.

Next come a number of sweeping assignments that the procedure, petition, original and mesne service process provided by the Act are constitutionally infirm because they do not afford due process, as guaranteed by Sec. 30, Art. II of the State Constitution and Sec. 1 of the Fourteenth Amendment of the Federal Constitution. In connection with these assignments it is further argued that the procedure

[1]This and all other references to our statutes are to R. S. 1939, and to the same section numbers in Mo., R. S. A., unless otherwise indicated. References to the Act here under adjudication are to the section numbers as they appear in Laws Mo., 1943, p. 1029 et seq. In 22 Mo., R. S. A. (Pocket Part), p. 11, the Act is printed with the sections numbered 11201.1, 11201.2 et seq., the decimal numbers thus corresponding with the numbering in our Session Act.

violates Sec. 28 of said Art. II because it denies taxpayers and tax lien holders the right of trial by jury; and that the initial notice by publication fails to conform to Sec. 38, Art. VI of the State Constitution because it does not run in the name of the "State of Missouri" and is not attested by the clerk of the court in which the suit is pending.

Taking up these assignments in order and stating the facts more specifically. The foreclosure suit is expressly denominated by Sec. 14 of the Act as an action in rem, and by Sec. 23 as a suit in equity tried by the court without a jury. And Sec. 32 declares the "rules of civil procedure in equity cases" shall apply except as otherwise provided. Under Sec's 8, 11 and 15, the petition is a mere list of the delinquent lands with a caption, prayer and the signatures of the County Collector and his tax attorney added. The Collector (by title only) is the plaintiff, and the delinquent lands are the defendants. No personal defendants are named, though the lists of delinquent lands do give the name of the last known taxpayer on each tract as shown by the tax records, along with a description of the tract by the smallest legal subdivisions or parts into which it is divided, and the year, amount and kind of taxes.

Sec. 17 requires that the service notice shall be published four successive weeks in a qualified newspaper, and shall include the petition. Since the latter contains the list of delinquent lands giving the names of the last known taxpayers, in practical effect it gives notice to those individuals. But otherwise the notice is "to whom it may concern" in nature, stating the general object of the suit and advising interested parties of their right to file answer or redeem, and that in default thereof their rights will be foreclosed. The section provides the Collector and tax attorney shall "cause" the notice to be published, but it does not issue out of the court and is not signed by the circuit clerk, but only by the Collector and the tax attorney. Sec. 19 requires affidavits of the publication of the notice to be filed in court, but does not say *who* shall make and file them. Sec. 18 provides for an additional notice by mail when the name and address of taxpayers are shown on the tax records. But the section further says the failure to mail such notices shall not invalidate the proceedings; and appellants concede the suit must stand or fall on the validity of the published notice except as to parties who enter appearance.

On the question of due process, respondents earnestly maintain the foregoing procedure, pleading and service process are wholly insufficient to support a proceeding in equity, in view of the maxims that equity acts in personam and specifically, and when in rem only through the person. 21 C. J., secs. 182, 183, p. 194. They cite: Pardee v. Aldridge, 189 U. S. 429, 433, 47 L. Ed. 883, 23 S. Ct. 514; Brown v. Wright (4th Ct.), 137 Fed. (2d) 484, 487; Restatement of the Law, "Judgments," Sec. 74, p. 335; State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 1090(f), 298 S. W. 83, 88(9). But

except for the Pardee case, which only states a general rule, these cited authorities do not even purport to say an equitable action cannot be prosecuted in rem.

Respondents err in contending that suits in equity cannot be actions in rem, or at least quasi in rem, and operate directly on the res. It is true that originally equity dealt only with personal rights, and enforced its decrees upon the conscience of the parties. But this artificial distinction in time was discarded. In many states it has been so provided by statute.[2] Thus, in Missouri it has been the law ever since 1816 that when a conveyance of real estate is decreed in chancery, the absolute title may be passed by the decree *directly* from the defendant to the complainant.[3] Likewise, throughout the same 130 years, nearly, our statutes have authorized service of process in rem by publication on nonresident defendants in equity cases.[4]

It has, furthermore, been expressly decided that tax liens may be foreclosed in equity where there is no adequate remedy at law. Bates v. Comstock Realty Co., 306 Mo. 312, 329, 267 S. W. 641, 645. And if this can be done, then undoubtedly the Legislature may provide that such proceedings *shall* be in equity, as the instant Act requires; or at least that they shall be conducted *as* in equity. For, since the levying of taxes is a matter solely of statutory creation, the courts must follow the method provided by statute for their collection, if adequate. 61 C. J., sec. 1358, p. 1043, sec. 1381, p. 1053; 26 R. C. L., sec. 339, p. 380; State ex rel. Hibbs v. McGee, 328 Mo. 1176, 1180(2), 44 S. W. (2d) 36, 38.

This is true so far as concerns the question of due process. But respondents argue that an equitable proceeding for the foreclosure of tax liens on real estate will further violate Sec. 28, Art. II of the State Constitution because it would deny taxpayers and the holders of tax bills, certificates and deeds the right of trial by jury. This constitutional guarantee protects that right only insofar as it existed at common law. See the numerous cases cited in 28 Mo., R. S. A., p. 605, note 4. And no such right existed at common law with respect to taxation. From time immemorial governments have collected tax revenues by summary administrative processes, not only without a jury but even without a judge, as was strikingly observed in Harris v. Wood, 22 Ky. 641, 643. See also: 3 Cooley on Taxation (4 Ed.), sec. 1326, pp. 2614-2624; 35 C. J., sec. 73, p. 183, sec. 79, p. 185; 31 Am. Jur., sec. 20, p. 569; Wickwire v. Reinecke, 275 U. S.

---

[2] 1 Pomeroy, Equity Jurisprudence (5 Ed.), secs. 134, 135, 170, pp. 183, 223; 2 ibid, secs. 428, 429, pp. 196-198; 4 ibid, sec. 1317, p. 895; 1 Story, Equity Jurisprudence (14 Ed.), secs. 90-93, pp. 91-94; 19 Am. Jur., sec. 452, p. 312; 21 C. J., sec. 183, p. 195; 30 C. J., sec. 102, p. 502.

[3] 1 Mo. Terr. Laws, sec. 2, p. 451; 2 R. S. 1825, secs. 39-41, p. 645, now secs. 1255-1257.

[4] Mo. Terr. Laws, sec. 1, p. 451; 2 R. S. 1825, sec. 6, p. 637, now Sec. 891.

101, 106, 72 L. Ed. 184, 48 S. Ct. 43; State ex rel. Ferguson v. Moss, 69 Mo. 495, 500.

Neither is there merit in respondents' contention that the petition provided for in the instant Act will not support a judgment in equity because it is a mere list of the lands and delinquent taxes. Their theory again is that since equity acts in personam and specifically, the petition should be directed to personal defendants and should be as certain, clear and concise as is required of a bill in equity. 21 C. J., sec. 374, p. 366. But where the statute prescribes a special form of petition or bill in a tax suit, it is sufficient if followed. 61 C. J., sec. 1397, p. 1061; State ex rel. Trammel v. H. & St. J. Ry. Co., 101 Mo. 136, 144, 13 S. W. 505, 506. The contents of the petition called for by this Act unquestionably are adequate to inform the taxpayer of the tax and the land on which it has been levied, its nature, how long past due and other pertinent facts.

We have also reached the conclusion that respondents' contentions on the invalidity of the original service process by publication are not well founded. Their chief argument is the same as on the points already discussed, being based on the proposition that a suit in equity is essentially a proceeding in personam; whereas the notice by publication authorized by the Act is directed solely against the tax delinquent lands, names no person defendants, and is served by publication not only on taxpayers and claimants who are nonresidents, unknown or absconding, but on known residents as well. It is true that ordinarily even in equitable actions in rem the summons process must be personally served if the defendants are residents of the state and can be found, or even in the latter event alone; and this is generally the rule elsewhere. But it does not follow that the Legislature is powerless to provide otherwise in suits for the foreclosure of public tax liens.

Due process is a very different thing in the assessment and collection of public taxes from the same right as applied to litigation between parties over private rights, the institution of the latter depending wholly on the will of the complainant. The reasons are apparent. The first is the government's exigent need for the pecuniary support necessary to its existence. The second is the futility of impeding the annual collection of taxes by requiring a predetermination of the titles to many parcels of land (in this case 25,000 or 30,000) and the identity and competency of their owners. The third is that taxes are collected periodically under fixed laws which, in a restricted sense, impart their own notice. The settled doctrine of the authorities[5] is that the taxing power is wholly legislative, and that land may

[5] 3 Cooley on Taxation (4 Ed.), sec. 1118, p. 2263, sec. 1326, p. 2614; Judson on Taxation (2 Ed.), sec. 340, p. 353; Black on Tax Titles (2 Ed.), sec. 149, p. 188; Gray, Limitations of Taxing Power, sec. 1176 et seq., p. 584; 61 C. J., sec. 1290, p. 1010, secs. 1359, 1360, p. 1044, sec. 1517, p. 1117; 26 R. C. L., secs. 352-353, pp. 393-394.

be summarily foreclosed and sold for delinquent taxes even by administrative procedure alone. This does not deny due process if there has been a compliance with the essential provisions of the statute, and the landowners are afforded an opportunity to be heard, though only by an administrative tribunal after the sale.

Such has been the ruling under the Fourteenth Amendment, with respect to judicial foreclosure proceedings, in several decisions of the United States Supreme Court cited in the margin.[6] In the Winona and Longyear cases the list of delinquent lands with a description thereof and the names of the owners if known, served not only as the text of the petition but also of the notice by publication. The proceeding in the Winona case was not designated as equitable; in the Longyear case it was. Both decisions held these "to whom it may concern" notices were valid process even against resident defendants.

In the Leigh case, as here, the tax foreclosure petition and notice by publication were directed solely against the land itself as defendant, under a Nebraska statute so permitting. Respondents attempt to distinguish that decision because the statute authorized that process only when the owner was unknown. But the decision made no such distinction. It said that where a statute provides for personal notice to landowners in such cases it is "from tenderness to their interests;" and summed up (italics and parentheses ours): "Where the State seeks . . . to sell the land for taxes . . . , it may proceed directly against the land within the jurisdiction of the court, and a notice which permits all interested, who are 'so minded,' to ascertain that it is to be (sold for taxes), *whether (they) be found within the jurisdiction or not,* is due process of law within the Fourteenth Amendment . . ." See also: City of Coral Gables v. Certain Lands, etc., 110 Fla. 189, 149 So. 36; Horne v. City of Ocala, 143 Fla. 108, 196 So. 441; (appeal dismissed for want of a substantial federal question, 311 U. S. 608, 85 L. Ed. 385, 61 S. Ct. 28); City of Utica v. Proite, 36 N. Y. S. (2d) 79, affirmed memorandum opinion, 288 N. Y. 477, 41 N. E. (2d) 174; Lynbrook Gardens v. Ullmann, 36 N. Y. S. (2d) 888, affirmed memorandum opinion, 37 N. Y. S. (2d) 671; reversed without decision on merits, 291 N. Y. 472, 53 N. E. (2d) 353. We shall return to these New York cases.

The foregoing is not unfamiliar law in Missouri. Prior to the enactment of Laws Mo. 1877, p. 384, delinquent real estate taxes were foreclosed by a proceeding in rem in the county court based on a "to whom it may concern" notice by publication and a petition which was simply a list of the delinquent lands, showing also the names of the

[6]Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 535, 40 L. Ed. 247, 250, 16 S. Ct. 88; Leigh v. Green, 193 U. S. 79, 92, 48 L. Ed. 623, 629, 24 S. Ct. 390, 393, affirming 64 Neb. 535, 542, 90 N. W. 255, 259; Longyear v. Toolan, 209 U. S. 414, 52 L. Ed. 859, 28 S. Ct. 506; Ontario Land Co. v. Yordy, 212 U. S. 152, 158, 52 L. Ed. 859, 28 S. Ct. 506; 3 Cooley on Taxation (4 Ed.), sec. 1412, p. 2793.

owners as they appeared on the tax book.[7] The 1877 Act repealed that part of the 1872 Act and converted the tax suit into an action quasi in rem against the owner of the land, who was to be served with process personally or by publication as in ordinary civil actions. That procedure continued for 56 years until the adoption in 1933 of the present Jones-Munger Act, now Sec's 11117 et seq., whereby an administrative procedure was substituted.

Respondents strongly rely on a decision of this court rendered during that period, Black v. Banks, 327 Mo. 341, 37 S. W. (2d) 594. It was a collateral action assailing a tax title based on the quasi in rem court procedure then in force. The decision broadly held: "It is fundamental and essential to due process of law that persons living in this State be given actual notice of suits affecting their property rights, and an opportunity to be heard and take steps to protect such rights both before and after judgment." Then it went on to say that substituted service could only be employed when the owners were nonresidents, absconding or unknown. The service statute in such tax foreclosure suits at that time was Sec. 12945, R. S. 1919. It provided, as we have stated, that the service should be as in civil actions in the circuit court; and the latter required personal service with the exceptions noted.

Apparently the quoted statement in the opinion was induced by those statutes. And while this court, in applying our Constitution to a state statute may go beyond the range of due process as enforced by the Federal courts under the Fourteenth Amendment—by declaring requirements of the statute are *essential* whereas the Federal courts regard them as merely regulatory[8]—yet we think the Black case, supra, went too far. As shown in the second preceding paragraph the history of our tax law both before and since that decision does not show that personal service of process on resident landowners in tax foreclosure suits has been regarded as a constitutional requisite. Due process refers to the general law. It does not make the law static and forbid changes within fundamental limits. Both before and after the period during which the Black decision was rendered, the taxing statutes have been held constitutional. Indeed, in the next to the last volume of our reports the purely administrative Jones-Munger law was upheld as affording due process, Kennen v. McFarling, 350 Mo. 180, 165 S. W. (2d) 681. And in the same way we now uphold on that issue the procedure, pleading and process provided by the instant 1943 Act.

---

[7]Laws Mo. 1872, secs. 184-194, pp. 119-122; G. S. 1865, secs. 88-112, pp. 123-127; and so on, with variations back to 2 R. S. Mo. 1825, sec. 28, p. 674.

[8]Castillo v. McConnico, 168 U. S. 674, 683, 42 L. Ed. 622, 18 S. Ct. 229; French v. Taylor, 199 U. S. 274, 277, 50 L. Ed. 189, 192, 26 S. Ct. 76, 77; Straus v. Foxworth, 231 U. S. 162, 170, 58 L. Ed. 168, 172, 34 S. Ct. 42.

However, respondents' other challenge of the initial service process is more serious, namely that the Act does not require the published notice to issue out of the court, permits it to be prepared and signed by the County Collector and his tax attorney alone, and does not say who shall make and file the affidavit of publication, notwithstanding Sec. 38, Art. VI of the State Constitution enjoins that all writs and process shall run in the name of the "State of Missouri," and that all writs shall be attested by the clerk of the court from which they shall be issued. Constitutional provisions are not to be lightly regarded, whatever may be thought of their wisdom. But generically the issuance of summons process is a ministerial rather than a judicial act, 50 C. J., sec. 23, p. 449; and it has long been held the above section is more directory than mandatory in nature, Creason v. Yardley, 272 Mo. 279, 198 S. W. 830. There is, furthermore, one case that seems to be squarely in point, State ex rel. Wells v. Hough, 193 Mo. 615, 640 et seq., 91 S. W. 905, 911 et seq., a unanimous decision by this court en banc (one judge not sitting) which has stood unchallenged since it was decided in 1905 nearly 40 years ago.

That case dealt with a contest over election to public office. Sec's 7029, 7031, R. S. 1899 required, as Sec's 11632 and 11634 do now, the service of a notice by the contestant upon the contestee as a basis for the contest. No initial process is issued out of the court, and the notice performs the functions of both the petition and writ of summons in an ordinary civil suit. The decision held the statutes were not open to challenge under Sec. 38, Art. VI, supra: reasoning that an election contest is a special proceeding entirely out of the course of the common law, both as to the tribunal and the issues and incidents of trial; and that another constitutional provision, Sec. 8, Art. VIII, recognizes election contests in courts of law or before the judges thereof, but authorizes the Legislature to designate where they shall be tried and the procedure applicable thereto. The opinion declared this empowered the Legislature to provide the special service process described above, notwithstanding Sec. 38, Art. VI.

So, too, Sec. 1, Art. X of our Constitution broadly confides the *whole taxing power* to the Legislature, which necessarily includes the collection of taxes. Throughout history the power has been exercised sometimes purely administratively, sometimes partially through the courts, but never according to the fixed rules of the common law or code of civil procedure if the Legislature had prescribed a different course. On the same reasoning we hold the notice process provided by the instant Act is not unconstitutional.

Respondents' assignment with respect to the mesne process contends that the sheriff's published notice of the foreclosure sale will not support the final judgment confirming the same, as rendered under Sec. 28 of the Act, because neither Sec. 26 providing for the notice, nor any other section of the Act, requires the making and

filing of an affidavit of the publication of the notice. Cases are cited of which Burden v. Taylor, 124 Mo. 12, 18, 27 S. W. 349, 350, is typical. The decision ruled that since a partition sale is a judicial sale, no title will pass unless and until the sheriff has reported the sale to the court and the same has been confirmed, the proceeding being different in that respect from those under execution, which are not judicial. Respondents argue that since tax sales under the instant Act also are judicial the same rule should apply; and that the making and filing by the sheriff of an affidavit of publication of the notice of foreclosure sale is necessary to furnish a record basis for confirmation thereof.

But appellants point out that Sec's 26, 27 and 28 of the Act require the sheriff to make a report of sale to the court; and also that the sale shall be conducted and "the sheriff's return thereof made" as provided in the case of sales of real estate under execution (except as otherwise provided). There is no call in the execution statutes for either an affidavit of publication or a report of sale. But aside from that, since the instant Act does require a report of sale to be made to the court, that necessarily means it must be filed—which is enough to give the court jurisdiction to confirm the sale. A general statute, Sec. 14969, provides that when *any* notice or other advertisement is required by law or court order to be published in a newspaper, the affidavit of the printer, editor or publisher as to the number of times and dates of publication, with a copy of the advertisement annexed, shall be *sufficient* evidence of the publication. It does not make it the only evidence. Several times it has been held that the proof may be made otherwise. Raley v. Guinn, 76 Mo. 263, 271; McDaniel v. Sprick, 297 Mo. 424, 433, 249 S. W. 611, 614(2). So we overrule this assignment.

The next group of assignments contend the procedure, pleading and process under the Act will not support the *kind* of decree provided for therein. Respondents say these procedural features are simply *borrowed* from the law, and that the decree will be binding only administratively, because if it were judicial the rules and restrictions of the general law applicable to proceedings in equity would have to be observed. We do not agree. Although the whole taxing power is legislative, yet if the statute so provides the collection of taxes may be entrusted to the judicial department.[9] Neither is it true that in such proceedings the regular forms of law must be followed. The same argument was rejected in the Leigh case (cited in marginal note 6), the United States Supreme Court holding the Legislature

[9]Houck v. Little River Drainage Dist., 248 Mo. 373, 389(6), 154 S. W. 739, 742, affirmed (same title) 239 U. S. 254, 262, 60 L. Ed. 266, 36 S. Ct. 58; Clark v. Austin, 340 Mo. 467, 485(12), 101 S. W. (2d) 977, 987(2); Harrington v. Hayes County, 81 Neb. 231, 235(2), 115 N. W. 773, 129 Am. St. Rep. 680; See also 26 R. C. L., sec. 352, p. 393.

could prescribe *any* procedure not violative of the Constitution. Such also was the ruling, in effect, of State ex rel. Wells v. Hough, supra, 193 Mo. l. c. 640, 91 S. W. l. c. 911.

Another argument is that the foreclosure proceeding under the Act is not in rem but quasi in rem,[10] because Sec's 23, 24, 26, 27 and 28 thereof permit an adjudication of the *personal* rights, titles, interest, liens and priorities of claimants *in* the land, both inter sese and as against the taxing authorities. Respondents assert that at least as to these personal claims the pleading and process should be directed to the claimants and not merely to the lands, citing the Restatement, "Judgments," sec. 75, p. 336, and 34 C. J., sec. 1677, p. 1175. Perhaps if the suit were solely to ascertain and foreclose the particular interests of individuals in the land the pleading and published process notice would have to be addressed to them. We are not ruling that question. But the foreclosure suit provided for by this Act primarily is a true suit in rem directed against the lands irrespective of ownership.

The provisions authorizing litigation in the suit between claimants inter sese are subordinated to that main issue. The Legislature can and has provided that the title sold shall be in fee simple; and the taxing authorities are not directly concerned with the rights of the landowners between themselves.[11] The further provisions for their benefit add nothing to their right to *defend* against the Collector's suit. Either with or without them all interests in the land could be sold.[12] Probably the purpose of the provision is to stimulate the payment of the taxes or redemption of the land before the sale, and to encourage bidding at the sale, by affording an opportunity to obtain a decree: quieting the title; ascertaining the interests of the several claimants so that it may be known who safely can pay the taxes or redeem; and determining the interests of lien holders, whereby their rights as beneficiaries *after* the sale will be fixed in tracts bid in by the Land Trust.

Furthermore, it must be remembered that none of this litigation between claimants inter sese can arise unless they appear in the suit and raise the issues, or unless they had already been served with requisite process in some consolidated suit. And quite as important from a procedural standpoint, these proceedings do not reach beyond the res itself (land in the jurisdiction) and no personal judgment

---

[10] 1 C. J., sec. 6, p. 929, sec. 171, p. 1041; 1 C. J. S., sec. 1(6), p. 944, sec. 52, p. 1150; 1 Am. Jur., secs. 45-46, pp. 634-637; Freeman v. Alderson, 119 U. S. 185, 30 L. Ed. 372, 7 S. Ct. 165.

[11] 3 Cooley on Taxation (4 Ed.), secs. 1490-1492, pp. 2934-2943; 61 C. J., sec. 1822, p. 1303, sec. 1828, p. 1307, 26 L. R. A., sec. 360, p. 401; Duffley v. McCaskey, 345 Mo. 550, 554-5, 134 S. W. (2d) 62, 64(7), 126 A. L. R. 853.

[12] Ballard v. Hunter, 204 U. S. 241, 257, 51 L. Ed. 472, 27 S. Ct. 266; Paddell v. City of New York, 211 U. S. 446, 451, 53 L. Ed. 275, 278, 29 S. Ct. 139, 140.

can be rendered. All taxes, costs, penalties, attorney fees, commissions and other authorized expenses incurred in the sale of each tract of land come out of the proceeds from the sale of that tract. This meets the essentials of a proceeding in rem, Freeman v. Alderson, supra, (cited in marginal note 10). In the Longyear case, supra (marginal note 6) the statute declared the publication notice, addressed to the lands, with the name of the owner if known, should be "equivalent to a personal service of notice on all persons who are interested," and should give the court jurisdiction to proceed to a decree. And where the statute provides, as Sec. 28 of this Act does, that the court shall order disbursement of the sale proceeds, undoubtedly it has jurisdiction to do it, the proceeds representing and being derived from the res. 35 C. J., sec. 98, pp. 65-66; 61 C. J., sec. 1640, p. 1212, sec. 2234, p. 1520. We hold the pleading and service process called for by the Act will not prevent the court from adjudicating the issues specified therein.

Another important assignment challenges the finality of the decree authorized by the Act. Sec. 23 thereof provides that the tax bills in suit shall be prima facie proof: (1) that the taxes described therein were validly assessed at the time indicated; (2) and that they are unpaid. The section further declares that absent any answer the allegations of the petition shall be taken as confessed. This necessarily means that if the landowners default, the tax sale, when confirmed by decree under Sec. 28, is final and conveys the whole title in fee simple under Sec's 26 and 27. Respondents maintain a decree based on pleading and published process addressed only to the lands cannot be made thus final, foreclosing any right of redemption and depriving innocent landowners of the right to establish in a later collateral action that the tax foreclosure suit was void for omission of *any* jurisdictional steps.

As we have held, the prescribed pleading and process are valid. But we agree the statute cannot make the foreclosure suit entirely self-sufficient, regardless of whether vital antecedent requirements have been complied with. Respecting due process, the general rule is that the judgment will be conclusive if the *essential* requirements of law have been observed.[13] The statute may make even an administrative tax deed prima facie evidence not only of the purchaser's title, but also of the regularity of the sale and prior proceedings. It cannot, however, make tax bills conclusive evidence of indispensable facts;[14] but the *finding and decree* of the court *on* the prima facie evidence

[13]Judson on Taxation (2 Ed.), sec. 368, p. 383; 61 C. J., sec. 96, p. 157, sec. 813, p. 655, sec. 1360, p. 1044, sec. 1681, p. 1238; 26 R. C. L., sec. 354, p. 395; Abbot v. Lindenbower, 42 Mo. 161, 166-7(1).

[14]4 Cooley on Taxation (4 Ed.), sec. 1551, p. 3027, sec. 1552, p. 3035, sec. 1593, p. 3150; Gray on Limitations of Taxing Power, secs. 1267-1270, pp. 625-627; 61 C. J., sec. 1954, p. 1375, sec. 1955, p. 1377, sec. 1953, p. 1373; Marx v. Hanthorn, 148 U. S. 172, 182, 37 L. Ed. 410, 13 S. Ct. 508; Raley v. Guinn, supra, 76 Mo. 263, 270.

may be res judicata, even in an action in rem or quasi in rem.[15] Its conclusiveness in each case will depend on whether the court had jurisdiction to render the decree. But it can be said, and we so hold in this case, that a decree rendered under the Act will be entitled to the same favorable presumptions that attend the judgment of a court of general jurisdiction in other actions. 3 Cooley on Taxation (4 Ed.), sec. 1408, p. 2788; Allen v. McCabe, 93 Mo. 138, 143, 6 S. W. 62, 63; Robinson v. Levy, 217 Mo. 498, 515, 117 S. W. 577, 582.

It is true that many of our tax statutes in the past have allowed the landowners to controvert a tax deed on such grounds as that: the land was not subject to taxation; or that the taxes had been paid; or that the land had been redeemed before the sale. It is likewise true that under the administrative procedure followed since 1933 these and other similar privileges have been accorded. The same statutes have also allowed a two year period for redemption after the sale.[16] But under the quasi in rem procedure against the owners of the land between 1877 and 1933, the land could not be redeemed after the foreclosure sale.[17] The foregoing were not constitutional rights (unless they involved matters so compelling as to be jurisdictional). This is the universal rule with respect to redemption,[18] and we are unable to see why it should not be applied to actions in rem.

We have in mind also that Lynbrook Gardens v. Ullmann, supra, 36 N. Y. S. (2d) l. c. 892, 37 N. Y. S. (2d) 671, held a tax deed under the in rem procedure prescribed by Chap. 61, Art. 7-A, Title 3 of the New York tax laws (on which our 1943 Act was modeled) could be impeached by establishing that the taxes for which the land was sold had previously been duly paid—this because the owner, knowing he had paid his taxes, would have no reason to scrutinize the delinquent tax lists; and also because there would be no cause of action and the court would have no jurisdiction, if the taxes had been paid. But, as in so many other instances that might be thought of, payment would be one of the underlying issues of fact on which jurisdiction would depend, and which the court would have power to decide.[19] Since the Act makes the tax bills prima facie evidence that

---

[15] 61 C. J., secs. 1576-1577, pp. 1165-1166, sec. 1680, p. 1238; 34 C. J., sec. 816, p. 514, sec. 819, p. 516, sec. 1381, p. 1381, sec. 1663, p. 1172, sec. 1667, p. 1175; State ex rel. Gott v. Fid. & Cas. Co., supra, 317 Mo. 1078, 1090, 298 S. W. 83, 89; Thomason v. Allen, 324 Mo. 1061, 1066, 26 S. W. (2d) 609, 610(2).

[16] Sec. 11162, 11145, R. S. 1939; 2 Wagner Stat. (1872, sec. 219, p. 1207, sec. 208, p. 1202; G. S. 1865, sec. 112, p. 127, sec. 108, p. 126.

[17] Laws Mo. 1877, sec. 12, p. 388, sec. 9962, R. S. 1929.

[18] 4 Cooley on Taxation (4 Ed.), sec. 1559, p. 3065; 61 C. J., sec. 1686, p. 1241; State ex rel. Stogsdell v. Evans, 53 Mo. App. 663, 667.

[19] 15 C. J., sec. 170, p. 851; 21 C. J. S., sec. 113, p. 174; 14 Am. Jur., sec. 168, p. 368; 34 C. J., sec. 851, p. 552.

the taxes are delinquent as shown; and the decree rests upon a finding to that effect; we believe it would be res judicata.[20]

We come now to assignments assailing particular provisions of the Act and seeking that far to limit the court's jurisdiction. Sec. 27 provides that when the tax sale is confirmed the court shall order immediate possession to be given to the purchaser. Respondents contend no order in the nature of a writ of assistance can be made against one in possession of land who was served only by publication, or not at all, especially one without actual notice. But they cite no authorities specifically applicable to tax foreclosure proceedings in rem. Usually the writ will issue only against parties to the suit and their privies; and it is discretionary. 4 Am. Jur., p. 439 et seq.; 7 C. J. S., p. 2 et seq.

But it has long been provided by statute, now Sec. 1256, that a writ of "possession" may issue to put a party in possession of land when a judgment has been rendered for the conveyance thereof to him, this historically referring to equity cases for specific performance, which have always been maintainable quasi in rem under (now) Sec. 891. It is further provided by Sec. 3574 that the court may order delivery of possession of premises sold under a mechanic's lien, though the service there also may be by publication, Sec. 3559. And since 1825 there has been a general statute empowering all courts to issue *all* writs necessary to the exercise of their jurisdictions according to the principles and usage of law. It is now Sec. 2008. But Sec. 27 of the instant Act says the court *shall* enter an order for *immediate* delivery of possession.

The general rule is that in the absence of statute a purchaser at a land tax foreclosure sale is not entitled to possession until he obtains his deed. 61 C. J., sec. 1802, p. 1295. Under the instant Act the decree itself vests title with right to possession. The purely administrative Jones-Munger law, Sec. 11135, conditionally entitles the purchaser to possession in one year after the sale, though the period of redemption does not expire for two years, Sec. 11149. Provisions authorizing the purchaser to take possession are found in our earlier tax laws: Laws Mo. 1849, sec. 4, p. 111; 2 R. S. 1855, sec. 15, p. 1355; Laws Mo. 1857, sec. 15, p. 96; these being in the period when land tax foreclosure proceedings were quasi in rem. Undoubtedly the Legislature has power to enact them. It may also authorize summary proceedings for the recovery of possession by the purchaser, such as a mandatory order to the sheriff, or a writ of assistance or possession. 61 C. J., sec. 1974, p. 1395. We hold the above provision of Sec. 27 of the Act is valid, but do not attempt to apply it to specific situations.

---

[20] 3 Cooley on Taxation (4 Ed.), sec. 1408, p. 2790; Hill v. Sherwood, 96 Mo. 125, 8 S. W. 781; Cooper v. Gunter, 215 Mo. 558, 566, 114 S. W. 943; Rogers v. Dent, 292 Mo. 576, 584, 239 S. W. 1074, 1076(3), 26 L. R. A. 615, note, 632b.

The next contention is that Sec's 22 and 27 of the Act cannot be enforced against incompetents. Sec. 22 provides that if any infant, person of unsound mind or convict in actual confinement shall file answer, or his disability be known to the court, a copy of the letter notice process described in Sec. 18 shall be sent by registered mail to his guardian or trustee; or if there be none, a guardian ad litem or trustee shall be appointed. But it further says that while failure to notify or appoint such guardian or trustee shall constitute error reviewable on appeal, yet in the absence of an appeal the decree will not be invalidated. Sec. 27 says the decree confirming the foreclosure sales shall vest a fee simple title in the purchasers (with two specific exceptions) barring all rights, titles and interests of the State and such incompetents. On this assignment respondents cite cases holding infants are wards of the court and cannot make contracts to employ attorneys; and argue that published notice process would not be "reasonably calculated" to inform incompetents of their rights because they would not read and could not comprehend them.

As heretofore stated, a judgment in rem is binding on the whole world as to the *res,* this of course including incompetents. We have also shown that as a practical matter it would be impossible for the state to seek out in advance the many owners of land subject to annual taxation and to determine their status or competency. In the absence of statutory provisions to the contrary the land of incompetents may be sold for taxes in the same manner as that of other owners. That is the rule now in the administrative procedure under the Jones-Munger law, except that persons under disability are allowed a longer redemption period, Sec. 11146. But the point stressed by respondents is that the section says the failure to appoint a guardian or trustee ad litem shall be error reviewable *only* on appeal. It is the general rule, even in personal actions, that such failure does not render the judgment subject to collateral attack. And certainly there is more reason for applying it in tax foreclosure proceedings in rem. The New York publication process in rem, directed only to the lands, was held binding on incompetents in Lynbrook Gardens v. Ullmann, supra, 36 N. Y. S. (2d) l. c. 891, 37 N. Y. S. (2d) 671. See also 31 C. J., sec. 266, p. 1121; 27 Am. Jur., sec. 121, p. 842; Little v. Browning, 287 Mo. 278, 281-2, 230 S. W. 92, 93(3); Reineman v. Larkin, 222 Mo. 156, 172, 121 S. W. 307, 311(9).

The next assignment charges that Sec's 23, 27 and 28 of the Act countenance the sale of delinquent lands on bids so shockingly inadequate as to amount to constructive or legal fraud, in defiance of Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S. W. (2d) 813, decided by this court en banc in 1942. The sale in that case was under the administrative procedure prescribed by the present Jones-Munger law, Sec's 11125-11133, but our rulings were the same under the prior quasi in rem court procedure between 1877 and 1933, where the service

process was as in other civil suits. See Mangold v. Bacon, 237 Mo. 496, 141 S. W. 650.

The contention is based on facts pleaded in respondents' petition and admitted in appellants' answers, as applied to the above sections of the Act. The facts pleaded were that the annual city taxes on land in Kansas City run 1.5 cents per dollar, and the annual state, county and school taxes run 2.24 cents per dollar, making the total annual general taxes 3.29 cents per dollar, which, for the minimum four years of delinquency contemplated by the Act, would be 13.16% of the assessed valuation—only an infinitesimal part of the actual value of the lands. Respondents say that with all statutory charges added to the delinquent taxes foreclosed, these sections would permit the land to be sold for less than 15% of its value.

Sec. 23 provides if a parcel of land be sold for a sum *sufficient* to pay the total general tax levies thereon, including all interest, penalties, attorney's fees and costs, but *no more,* and the same is confirmed, then the proceedings shall be dismissed as to the junior lien holders. Sec. 27 says if no bid in that amount is received after the parcel has been auctioned on three different days, then the parcel shall be struck off and sold to the Land Trust on a constructive bid of the required amount in the absence of a higher bid. Sec. 28 provides that on the hearing to confirm the sale the court *shall* hear evidence on the value of the lands sold, as offered by any interested party to the suit, and in addition may summon any city or county official or person as a witness; and *shall* forthwith determine the adequacy of the bid on each such parcel. As to any found adequate the court shall confirm the sale: as to any found inadequate the purchaser may increase his bid to an amount designated by the court as adequate; and in default of that the sale shall be disapproved and the land ordered resold.

Without any desire to reopen the issue decided in the Bussen case, it is submitted: that an administrative foreclosure sale is *not* "against common right," as some of the earlier cases say, but on the contrary the payment of taxes is a paramount and common *obligation* upon which the very existence of government depends; and that after taxes have been lawfully levied and assessed, unreasonable impediments to their collection encourage indifference, depress bidding at the sales and beget further litigation. In this case it is admitted that there are 25,000 to 30,000 parcels of land in Jackson county on which at least some general or special taxes are delinquent four years or more. An interesting article in 51 Yale Law Journal, pp. 175, 176, shows the detriment resulting from inability to vest a marketable title by administrative foreclosure sales, and the expense of resorting to a quasi in rem court procedure against persons, as in the foreclosure of mortgages. In the latter connection the article refers to figures showing that the average cost of 22,756 mortgage foreclosures in a borough of

New York City was $564.54. It mentions with approval the New York Act then recently adopted.

But that is aside, for the Bussen case impliedly concedes the Legislature has power to provide that the title vested by a tax foreclosure sale shall not be set aside for inadequacy of the bid; for it answers a contention that the statute did so provide by disproving it. It is evident that Sec. 28 of the instant Act attempts to supply that omission—by provisions which do not appear in the New York Act. The section requires the court to hear evidence on the adequacy of the successful bids; and to reject such of them as are found inadequate and order a resale, if the purchasers will not increase their bids to a figure deemed by the court to be reasonable. This procedure applies to sales to the Land Trust as well as other purchasers. Thus the question of adequacy is made a direct issue in every case, and the court's decision on confirmation should stand res judicata as on other issues of fact. We see no constitutional or legal objection to that course, and overrule respondents' contention.

Another kindred assignment charges that Sec. 26 of the Act does not require the sale of each tract to be made to the highest bidder. This contention is based on the fact that the form of notice of foreclosure sale set out in the section states that "if no acceptable bids are received" on any parcel of land it will be sold to the Land Trust in full satisfaction of the tax liens. But that phrase evidently refers to the requirement of Sec. 28 that all bids must be found adequate, and in that sense acceptable to the court. For only seven lines further up, the form of notice announces that the sheriff will sell the delinquent lands, "parcel by parcel, at public auction, to the highest bidder, for cash," at a designated time and place. And Sec. 27 permits the sale to the Land Trust after three auctions, only in case the sheriff has received no higher bid by that time. There is no merit in this assignment.

The next assignment assails as void provisions in Sec's 10, 23, 24, 25, 27, 28, 33, 34 and 47 of the Act requiring attorney's fees to be collected on redemption, or from the proceeds of sale of each foreclosed tract, along with the principal of tax bills and the interest, penalties and costs. Sec. 47 makes the amount of such attorney's fees the same as in Sec. 11387, Art. 22, Chap. 74. That section definitely fixes the allowances. In this connection it should be further noted that Sec. 20 provides all suits to collect "delinquent tax bills" pending when the County Collector's suit is brought, and affecting the same land, shall be consolidated therewith; and that "any tax bill" on which such foreclosure suits are pending may be included in the County Collector's suit, thereby abating the former, in which event all amounts then due on such tax bills, including attorney's fees, shall be listed and continued in force in the Collector's suit.

Attorney's fees have been charged on the redemption and foreclosure of delinquent land taxes in this state at least since 1877. Prior to 1933 the amount payable on redemption was left to the determination of the court, Sec. 9949, R. S. 1929; so too of special benefit drainage taxes, Sec. 12517. The validity of such exactions cannot be questioned.[21] But respondents' main contention is that the charge is retrospective and violates vested rights—this because there was no provision in the Charter of Kansas City authorizing it when many of the now outstanding special tax bills were issued, including their own. The contrary was held in nearly all the cases cited in the annotations just listed in the margin, particularly those in 28 L. R. A. (N. S.) and 90 A. L. R. l. c. 537. And the same was ruled in State ex rel. Rosenblatt v. Kerr, 8 Mo. App. 125, 126(4), the reason being that the exaction goes to the remedy and not to substantive rights. Neither can it be said that the section is discriminatory and double on the theory that attorney's fees can be charged in consolidated pending suits, or those whose subject matter is included in the Collector's suit, and still another fee in the Collector's suit. We see nothing in Sec. 20, or any of the other sections cited, warranting that construction. 15 C. J., sec. 253, p. 117.

A related assignment complains that Sec. 20 is retrospective, denies due process and impairs vested rights for other reasons. After providing, as stated above, for the consolidation or assimilation and abatement of pending actions on tax liens, the section continues by saying that in the Collector's suit "the statutes of limitations shall not prevent the parties to such pending suits from asserting all rights and defenses which they then had;" and that any tax liens existing at the time the Act took effect "shall not be abated" by reason of its terms, but the holders of such tax liens shall assert them in any suits under the Act as to any real estate affected thereby. In other words, when a tax bill already sued on in a pending action is included in the Collector's suit, the pending *action* is abated but the *tax lien* is not.

Then the section goes on to say that suits brought under the Act involving delinquent tax bills also under collection in pending actions, shall be tried in the same way as other suits under the Act. But if the Collector fails to bring such suits, any taxing authority or holder of delinquent tax liens must sue on them under Sec. 10 of the Act within two years after it took effect, or within two years after such tax liens severally become delinquent four years, as the case may be. If through error or omission the Collector's petition should

[21] 3 Cooley on Taxation (4 Ed.), sec. 1273, p. 2542; 15 C. J., sec. 247, p. 114, sec. 257, p. 117; Annotations: 17 L. R. A. (N. S.), p. 910; 28 L. R. A. (N. S.), p. 1062; L. R. A. 1915E, p. 943; 11 A. L. R., p. 885; 90 L. R. A., pp. 531, 537; State ex rel. Bauer v. Edwards, 144 Mo. 467, 471, 46 S. W. 160, 161; St. Francis Levee Dist. v. Dorroh, 316 Mo. 398, 416, 289 S. W. 925, 933(15).

be dismissed as to a tax lien affecting any real estate described therein, such dismissal shall be without prejudice and the holder of such tax bills may at his option bring another suit to foreclose the lien thereof at any time within one year after the date of such dismissal.

Sec. 10 provides that the County Collector shall have exclusive power to sue under the Act, but if in any year he fails to do so as against particular parcels of land, then any taxing authority or private party holding delinquent tax liens thereon may bring the suit as relator in the name of the Collector, and with the same effect. Under Sec. 23, the issues on general tax liens are tried first, judgment of foreclosure is rendered, and the foreclosure sale is held and confirmed by another judgment, as to any given parcel, before trial of the issues between special lien holders affecting the same parcel. In the meantime appeals from either judgment may intervene and delay a final decree as to that parcel.

Applying the foregoing provisions of Sec. 20 to a factual situation, respondents allege they, and others, have pending in the circuit court at Kansas City several hundred actions to foreclose special tax bills, the liens of which would have long since expired but for the pendency of those actions. They contend that under the Constitution the life of the liens cannot be extended as Sec. 20 purportedly would or might do, citing Clark v. K. C., St. L. & C. Rd. Co., 219 Mo. 524, 118 S. W. 40, an action under the wrongful death statute. It seems to us this Clark case is against respondents rather than for them. When the decedent there was killed, the statute required the bringing of the action within one year, and that was done. Almost 11 months after the death a new statute went into effect, allowing a plaintiff suffering a nonsuit in such cases an additional year thereafter to refile his action if it had originally been brought in time. Presently the plaintiff did suffer a nonsuit, and refiled the action almost 14 months after the death. The decision held the new statute applied, and *denied* the defendant railroad's contention that it operated retrospectively and in violation of vested rights.

But respondents construe the Clark opinion as reaching that conclusion because the new statute became operative *before* the original *statute* had run; whereas here the 1943 Act took effect *after* the Charter period of limitation on their tax bills had expired. We think the decision held, and says, the new statute was applicable because it became an operative law *while the action* was pending. We concede the rule that a dead cause of action ordinarily cannot be revived by extending the statute of limitations. 34 Am. Jur., sec. 29, p. 35; 12 C. J., sec. 576, p. 980. But certainly a cause of action is not dead when a suit was brought on it before the statute of limitations had run, and the action is still pending. As to pending actions the almost universal rule is that limitation statutes, being only remedial or

procedural, may be either lengthened or shortened, the latter only reasonably.[22]

In this same connection respondents insist that the enforced consolidation or absorption of pending private actions on special tax liens would further deny due process and violate vested rights, because neither the Legislature nor the courts have *power* to authorize the appropriation of these causes of action by the County Collector and the ousting of experienced attorneys chosen by the holders of the tax bills, who would be supplanted by lawyers chosen by the Collector, his main interest being to collect the general tax liens. Furthermore, it is obvious that the trial of the issues on the special liens might be delayed since Sec. 20 requires the issues on the general liens to be disposed of first, and the sale to be held and confirmed. Respondents say all the foregoing would "contaminate" their actions; and that they would hesitate to bid at the tax sales before their own rights and priorities had been established.

We disagree with respondents' contention that the Legislature cannot compel by statute the consolidation of causes of action. Sec. 1094 in our Civil Code authorizes it but restricts the court's discretion to certain classes of actions. However, there are numerous special proceedings involving the assessment of special benefits, as in the organization of drainage and sewer districts, which are heard by one court in one docketed case. And the texts recognize it is within legislative competency to enact statutes requiring the consolidation of actions. 1 Am. Jur., sec. 93, p. 476; 1 C. J., sec. 310, p. 1122; 1 C. J. S., sec. 109, p. 1343. In this state when there are several mechanics liens against the same real estate, Sec's 3570-3573 provide for the bringing of a single equitable suit joining all lien claimants, which stays any other pending actions on those liens. We have no doubt of the constitutionality of Sec. 20, as an abstract question of law.

But if it be true, as respondents assert, that the assembling of these liens in the Collector's suit would enable him to usurp control of causes of action belonging to the private holders of special tax liens, and to deprive them of the right to be represented by their own counsel, we should say it would be a very serious and unconstitutional violation of their rights. However, the appellant taxing authorities deny that such is the fact, and point to the provision in Sec. 20 that "the holders thereof shall assert their respective liens" in any suits under the Act. We take that view. Neither is it true that the attorneys for the special tax lien holders could not participate in the

[22] 34 Am. Jur., sec. 18, p. 27, sec. 21, p. 29, sec. 23, p. 30, sec. 28, p. 33, sec. 29, p. 35; 12 C. J., sec. 561, p. 976, sec. 570, p. 977, sec. 574, p. 978, sec. 782, p. 1088, sec. 1000, p. 1224; 16 C. J. S., sec. 266, p. 683, sec. 418b, p. 868, sec. 615, p. 1237; Falvey v. Hicks, 315 Mo. 442, 463, 286 S. W. 385, 394(2).

trial on the general tax liens, insofar as the two classes of liens on a tract might be in conflict over the validity or priority of the latter—a point we shall come to presently. For Sec. 23 further says the court shall determine "the order and priority of the liens."

As to the inconvenience and "contamination" which respondents say would result from the joinder of the several causes of action, it should be remembered that they are to be grouped only as they affect the same parcels of land. Some are senior liens and some are junior. A foreclosure of the former alone would extinguish the latter. A foreclosure of the latter independently would only convey title subject to the former. If a marketable title could be sold all would benefit. On the whole, the collection of taxes would be expedited, as evidenced by the fact that so many delinquencies have accumulated now. The trial of all the lien suits separately would take much of the courts' time. It is true some delay might result from including too many parcels in the same suit under the instant Act. But it does not say how many shall be included, leaving it to the discretion of the Collector. We cannot say the Legislature lacked power to provide this method of procedure.

On the question of priority of tax liens, respondents assail Sec's 4 and 6 of the Act as being in conflict with Sec. 377, Art. 12 of the Kansas City Charter, and therefore violating vested rights; and they also assail Sec's 23, 24 and 25 of the Act as purporting to enforce those priorities. Sec. 4 provides that tax sale certificates, certificates of purchase and tax deeds issued by any municipality shall be on a *parity* with delinquent general tax liens as to priority of lien. And Sec. 6 declares general tax liens shall be *senior* to all others—thus subordinating special tax liens. On the other hand Sec. 377, Art. 12 of the Kansas City Charter provides tax deeds issued on a certificate of purchase shall convey an absolute title in fee simple *subject* to all unpaid state, county and city taxes, general and special. Thus it will be seen that the Act makes municipal tax sale certificates, certificates of purchase and tax deeds senior to special tax liens whereas the Charter says a tax deed shall convey a title subject thereto.

Appellants answer that under earlier decisions of this court respondents are right, and a tax deed was subject to special tax liens. Good v. Johnson, 299 Mo. 186, 199, 252 S. W. 368, 369; State ex rel. Land v. Trimble, 318 Mo. 963, 967-8, 2 S. W. (2d) 616, 617(2). The latter case applied the same rule to certificates of purchase. But appellants point out that this Land case was distinguished in State ex rel. Associated Holding Co. v. Shain, 335 Mo. 474, 477, 73 S. W. (2d) 391, 393. That case is not in point. There, real estate had been auctioned in foreclosure of delinquent city taxes. The city bid it in, and thereafter resisted a similar action brought by the holder of paving tax bills previously issued against the same property. The tax bill holder claimed the city's tax title was subject to his special

tax liens. This court overruled that contention, it is true, but not on any ground contravening the theory of priorities announced in the Land case. The holding simply was that when the city bid in the property it was not a *purchase* but merely a withdrawal of the property from public sale, the title remaining in the record owner and the city retaining its tax lien.

That doctrine has been repudiated in a recent case, In re Ueck's Estate, 286 N. Y. 1, 17-18, 35 N. E. (2d) 624, 630. But conceding it is sound, it would apply only when the taxing authority had bid in the property, not where there had been an outside purchaser. The Land Trust is created by the instant Act for that express purpose, and actually takes title to all such tracts in trust for the foreclosing tax lien holders, with power to sell or trade it or assemble it for public parks. So we uphold respondents' contention as to the priority of unpaid special tax liens protected by Sec. 377, Art. 12 of the Kansas City Charter, as against tax deeds and certificates of purchase. It would be a clear violation of vested rights to reverse the priorities as to these.[23] But the respective priorities of tax liens is a matter for legislative determination.[24] And the priority provisions of the 1943 Act may be treated as operating prospectively, and applying only to tax certificates, deeds and special tax liens issued after it became effective.

Respondents make another similar assignment, that the instant Act impairs vested rights by shortening the five year period of redemption allowed by said Sec. 377 of the Charter to the owners of real estate sold for taxes. They show that Sec's 7, 8 and 20 of the Act permit the Collector to sue for the foreclosure of all delinquent tax liens on land if any general tax lien among them be at least four years old. And under Sec's 25, 26 and 27, when the foreclosure sale is made and confirmed an absolute title vests in the purchaser barring any equity of redemption. Appellants reply that under the schedule in the Act the minimum elapsed time in such litigation, counting from the due date of the tax bills, would be nearly as long as the five year Charter redemption period; and they aver that right of redemption is not a vested right and can be shortened. But the law on that point is not all one way, by any means, 4 Cooley on Taxation (4 Ed.), secs. 1560, 1561, pp. 3065, 3067; 12 C. J., sec. 524, p. 966; 16 C. J. S., sec. 235, p. 660.

However we fail to follow the reasoning on either side. The redemption period vouchsafed by the Charter dates from *tax sales thereunder,* not the due date of the tax bills. We will concede the rule contended for by respondents might apply to land as foreclosed under the Charter before the instant Act became effective. But it

[23] 12 C. J., sec. 522, p. 965; 16 C. J. S., sec. 233, p. 659.
[24] 61 C. J., secs. 1192, 1193, pp. 931-2; 26 R. C. L., sec. 361, p. 404; State ex rel. McGhee v. Baumann, 349 Mo. 232, 236, 160 S. W. (2d) 697, 698.

does not follow that the Legislature cannot provide for a new procedure applying to long standing tax delinquencies and denying any right of redemption after a sale thereunder. The instant Act operates prospectively. The State had not guaranteed that the Charter period of redemption will never be shortened or abolished.

Still another similar assignment challenges the priority rating of general tax bills as fixed by Sec's 4 and 6 of the Act, but for a different reason. These sections, taken together, make tax certificates, certificates of purchase and deeds, and general tax bills of the State, county, municipalities and school districts, covering the same land and *for the same tax year,* rank equally but in reverse order by years, the last being first. In State ex rel. McGhee v. Baumann, supra, 349 Mo. l. c. 236-7, 160 S. W. (2d) l. c. 699, this court en banc held that Sec's 11109, 11206 and 11207 by implication place all the above tax liens on an equality without regard to the years of accrual; and it was so ruled. These statutes have been in the books for years. The result of the ruling is that upon a foreclosure of general tax liens for different years all would stand on an equal footing.

Respondents assert the above provisions of the instant Act conflict with the ruling in the McGhee case, and it is patent that they do. The Legislature has simply made a new rule by statute—and added the further requirement that all delinquent taxes for all years on the same land be foreclosed together, thereby obviating the objection mentioned in the McGhee opinion that foreclosure of the latest year's taxes alone might enable the landowner to evade payment of the earlier taxes. The construction placed by the McGhee case on the earlier statutes cited became a part of those statutes. Any detrimental departure from them in the instant Act might impair the vested rights of general tax bill holders if their rights are substantive. As ruled in the fifth preceding paragraph, an existing tax lien is a vested right. It may not be a *title,* or only an "inchoate" title, but nevertheless it is a lien on real estate and a property right of value. We hold the Act can be construed prospectively only as to any outstanding general tax liens whose priorities are affected by the change. Klocke v. Klocke, 276 Mo. 572, 581-2, 208 S. W. 825, 827(6).

We come now to the assignments challenging "operational" features of the Act. Sec. 8 provides all taxing authorities *shall* annually file their lists of land taxes, delinquent four years or more, with the County Collector for the purposes of the foreclosure suit, and Sec's 7 and 10 provide he shall bring the suit. Respondents say these provisions are void as regards city taxes because: Sec. 16, Art. IX of the State Constitution gives Kansas City the power to frame its own charter; it has done so, creating certain offices which are required to collect its taxes; and the Legislature cannot compel the transfer of that function to the County Collector, a county officer. Appellants

say Sec. 373, Art. 12 of the Charter anticipates and sanctions that procedure.

That section of the Charter contains provisions which contemplate the transfer of both the assessment and collection of city taxes to county officers, whenever the state laws permit. Then it continues: "And the Council may provide by ordinance for the collection by county officers of all taxes and assessments, general or special, or any of them or any part thereof, including any and all redemptions." Following that are provisions "that it shall be the duty of the County Collector to collect all such taxes and assessments including redemptions, as he may be, by ordinance, directed to collect, and the city shall hold him harmless from all damages arising out of such collection of any invalid tax." There is also a provision requiring the Collector to give a bond. Certainly it cannot be said the instant Act conflicts with these provisions of the Charter. This assignment is ruled against respondents.

Another assignment contends that a provision in Sec. 8 of the Act is void because it requires the payment of a filing fee of 65c to the County Collector for each parcel of land described in the delinquent land lists filed with him. All taxing authorities must file these lists annually. Private owners of tax bills may do so. The constitutional provision invoked against this requirement is Sec. 10, Art. II. It provides that the courts shall be open to all the people and that justice shall not be sold, denied or delayed.

Respondents say the requirement is extortionate and was doubtless inserted to intimidate private tax bill holders. Their counsel has volunteered in his brief that his clients would have to pay more than $1000—which would indicate they own tax bills on more than 1500 parcels of land. These statements mainly are pure conclusions. Only the public taxing authorities are compelled to pay this fee. It is wholly optional with private tax bill holders. They can sue on their own tax bills or file answer or intervene in the Collector's suit without having paid the fee. It is fundamental that the exaction of reasonable fees and costs in a court action does not constitute a denial of justice. Neither do officers' fees have to be fixed at the actual cost of the service. It is a matter primarily within legislative discretion. The question at best can only be whether the fees are so high as to be prohibitory. We overrule the assignment. 12 C. J., secs. 1106, 1108, p. 1291; 16 C. J. S., secs. 714, 716, pp. 1502-3; Eckrich v. St. L. Transit Co., 176 Mo. 621, 650-1, 75 S. W. 755, 763-4, 98 Am. St. Rep. 517, note, 62 L. R. A. 911; Greene County v. Lydy, 263 Mo. 77, 98, 172 S. W. 376, 383(8), Ann. Cas. 1917C, 274.

Another assignment charges that Sec. 21 of the Act is void, because it provides: that any lawfully appointed deputy sheriff may perform all acts required of the sheriff by the instant Act, including the issuance of tax deeds, according to the order of the Court and in

the name of the sheriff; and that the salary and expenses of such deputy sheriff shall be paid fortnightly by the Collector to the sheriff in lieu of all other costs or fees payable to the sheriff, upon itemized requisition from the sheriff. The only section of the Constitution invoked against these provisions is Sec. 10, Art. IX which creates the office of sheriff. It says nothing about fees.

Respondents' argument is that since the sheriff is a constitutional officer whose duties are prescribed by statute, he is entitled to the emoluments of his office; and cannot be deprived of them by the device employed in Sec. 21, of requiring the sheriff to accept the salary and expenses of such deputy sheriff for services rendered under the instant Act, in lieu of the costs and fees that the deputy would otherwise have earned for the sheriff's office. Respondents do *not* cite Sec. 12 of the same Article IX of the Constitution, which provides that the General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population. Neither do they cite Sec. 8 of Article XIV, which provides the compensation or fees of no State, county or municipal officer shall be *increased* (it does not say decreased) during his term of office.

Just why these provisions were inserted in the Act we do not know. There is nothing in it saying the sheriff will not receive his usual fees if *he* performs the services for the Land Trust. Under Sec. 13, Art. IX of the Constitution the fees *any* sheriff may retain are limited to $10,000, and usually there is a lesser statutory limitation. Fees in excess of that go into the county treasury. Sec. 21 of the Act requires the sheriff to be *reimbursed* for the salaries and expenses of his deputies. But he or the county will lose the fees the deputy would have earned if he had been employed in official work other than under this Act. Nevertheless, the Legislature had power to reduce the fees; and also power to classify by population the counties to which the Act should apply, or to make any other reasonable classification. Greene County v. Lydy, supra, 263 Mo. l. c. 101-103(3), 172 S. W. l. c. 383(12), Ann. Cas. 1917C, 274. We rule this assignment against respondents.

The last "operational" assignment assails the Land Trust created by Sec's 36 and 37 of the Act for the management, sale and disposition of tax delinquent lands, purchased by it under Sec. 27. Ten subsequent sections also deal with it. The land is first inventoried and appraised by a "Land Commissioner" appointed by the Land Trust under Sec. 39 of the Act. The Land Trust has large powers, including the sale or trading of the land, and assembling it for public parks or other public purposes. It can do this in its own sole discretion (with exceptions to be noted later), and without the consent of its beneficiaries. The beneficiaries, speaking generally, are the holders of foreclosed tax bills against any such land sold or otherwise dis-

posed of by the Land Trust. It is composed of three members, or "Land Trustees," who are also its officers. One is appointed by the County Court; one by the City Council of the largest city in the county; and one by the Board of Directors of the School District having the largest population. Their terms of office are four years. Other facts will be stated as we proceed.

Respondents' first contention is that the foregoing provisions purport to make the Land Trust a corporation, but actually vest all its powers in the three trustees *individually*. They therefore assert any *corporate* business transacted would be in violation of Sec. 7, Art. XII of the Constitution, which forbids any corporation to engage in business not expressly authorized by its charter or the law creating it.

We think the Land Trust unquestionably is a public, or political, or quasi private, or quasi corporation, variously so-called, possessing and exercising its power through its officers.[25] We do not agree that its trustees act as individuals. Although Sec. 36 of the Act calls the Land Trust a "Commission" yet Sec. 37 refers to the "terms of office" of the trustees. Sec. 40 says it shall be a "continuing body" having "the general power to administer *its* business as any *other* corporate body." It can sue and make deeds in "its name." The deeds are authenticated with an official seal bearing the same name. While Sec. 41 sometimes speaks of the discretion or power of the "Land Trustees," yet they are appointed quadrienially by the governing bodies of the three local taxing authorities as members of the corporation, and evidently are referred to in that capacity.

Respondents also cite State ex rel. Jones v. Brown, 338 Mo. 448, 454(1), 92 S. W. (2d) 718(1), which declared unconstitutional an act authorizing three to seven qualified electors to form a bridge corporation as a public agency. It is not in point. The decision held the Legislature could not delegate to private citizens the power to create or not, as they chose, a corporate *public* agency, because that function is legislative. But here the Legislature did *directly* create the Land Trust. Sec. 36 of the Act provides "There *is hereby* created" a Commission to be known as the Land Trust. Respondents further argue that even if it be conceded the Act creates the Land Trust, still it is left to the will and caprice of the three taxing authorities whether the Land Trust shall ever come into existence, because they might not appoint the trustees, and are not coerced by the Act or penalized for any failure to do so. This contention is wholly without merit. Sec. 37 says one trustee *shall* be appointed by each

[25] 14 C. J., sec. 45, p. 75; 18 C. J. S., sec. 18b, p. 396, sec. 21, p. 399; 13 Am. Jur., sec. 3, p. 155, sec 17, p. 171; 27 Words & Phrases (Perm. Ed.), p. 776; 32 ibid, p. 804; 35 ibid, p. 625; Laret Inv. Co. v. Dickmann, 345 Mo. 449, 454(2), 134 S. W. (2d) 65, 68(2); State ex rel. Highway Commission v. Bates, 317 Mo. 696, 296 S. W. 418, 419; Harris v. W. R. Compton Bond & Mtg. Co., 244 Mo. 664, 688, 149 S. W. 602, 609(2).

of the three taxing authorities; and that the mayor of the largest city shall make the necessary appointment in any case where the appropriate taxing authority fails to act in thirty days.

Another contention is that the Act is void as to the Land Trust because legislative power is delegated to it without any definite standards for guidance—referring to its unfettered discretion in appraising the land through its appointee, the Land Commissioner, and in the handling and sale thereof. Respondents further contend that the power to collect taxes cannot be delegated to individuals. First, let us say the Act does not delegate the collection of taxes to the Land Trust. The delinquent taxes are *paid* when the Land Trust bids in the land and the sale is confirmed. By so doing it acquires the title for its beneficiaries, and its duty is to handle and dispose of the land to the best advantage, much as in the Housing Authorities Law, Art. 36, Chap. 38, R. S. 1939, discussed in the Laret case cited in marginal note 25.

Furthermore, the Act does not leave the Land Trust without guidance. In twelve long sections its powers and duties are stated in detail, only a small part of which we have set out above. Under the decisions, this need be done only within practicable limits, leaving to the administrative delegatee the interpretive power of filling in the details.[26] And it is clear that the Legislature could not have prescribed all the details in appraising, handling and selling many tracts of land. It might have made other requirements for the selection of the appraisers, but that was a matter for Legislative determination.

Respondents also invoke Sec. 2, Art. XII and subsection 25 of Sec. 53, Art. IV of the State Constitution, both forbidding the creation of any corporation by local or special law; and they also rely on Sec. 21, Art. X, which requires the corporators of all corporations, except those formed for benevolent, etc., purposes, to pay into the state treasury an incorporation fee based on the amount of capital stock. The Act is not a local or special law, though at the present time it applies only to Jackson County. Other counties growing to the required population will come within it. Roberts v. Benson, 346 Mo. 676, 681(4), 142 S. W. (2d) 1058, 1060(4). Neither does Sec. 21, Art. X, supra, apply to the Land Trust. It is not a private corporation, and it has no capital stock.

Another assignment is that Sec. 40 is void and unenforceable insofar as it provides that the Land Trust may convey by its deed an absolute fee simple title without the consent of its beneficiaries. It is argued that no legislative fiat can make a deed absolute and conclusive beyond the range of judicial inquiry. But the Act does not even purport to declare that the people cannot resort to the courts

[26]State ex inf. Crain v. Moore, 339 Mo. 492, 498-9, 99 S. W. (2d) 17, 21(6); Rust v. Mo. Dental Board, 348 Mo. 616, 626, 155 S. W. (2d) 80, 84(7).

for the purpose of testing such conveyances. The question is, what law will they encounter when they get there. We have already held the Legislature may provide for the sale of the whole fee simple title to land at tax foreclosure sales, and that that title will pass if the proceedings are not jurisdictionally invalid. There is no reason why the Land Trust, as purchaser at those sales, cannot convey the same title. Neither is it true that the consent of the beneficiaries is essential to the validity of the sale. There are numerous private trusts that exclude any control or consent by the beneficiaries, as often in testamentary trusts and always in spendthrift trusts. And with respect to public trustees the instances are many, as in bankruptcy, receivership and the like.

It is contended further that there is nullifying conflict between Sec. 40 and paragraphs 3 and 4 of Sec. 41 of the Act. The former provides land cannot be sold by the Land Trust for less than two-thirds of its appraised value without the authenticated consent of two of the three appointing taxing authorities; whereas the two paragraphs of Sec. 41 both say the land may be sold in the sole discretion of the land trustees. It is axiomatic that the various provisions of a legislative act should be construed together and harmonized if possible. Obviously that can be done in this instance. If the land is sold at a figure requiring the consent of the taxing authorities under Sec. 40, it must be obtained: if it be sold above that figure such consent is unnecessary and the sale may be made in the sole discretion of the land trustees as officers of the Land Trust. But in either event the consent of the beneficiaries, as such, is not essential.

 Still another assignment concerning the Land Trust challenges Sec. 45. Respondents assert it exempts from taxation the whole title to any land held by the Land Trust. But it does not so provide. It says the interests of "each *taxing authority* therein" shall be exempt. But further on this point for another reason. Under Sec. 2(e) a "taxing authority" is defined, quoting substantially, as including any governmental, managing, administering or other lawful authority, now or hereafter empowered by law to issue tax bills, the State of Missouri or any county, municipality or any school, road, water, sewer, levee, drainage, special benefit, special assessment or park district.

Sec. 2(d) defines a "tax bill" as representing real estate taxes and the lien thereof, whether general or special, levied and assessed by any taxing authority. Sec's 44 and 49 define the beneficiaries of the land trust, who are to receive the net proceeds from the sale or other disposition of any land as made by it. The beneficiaries are the taxing authorities *and* the other holders of tax bills against that land, which were included in the judgment of foreclosure pursuant to which the Land Trust bid it in. The interests of the beneficiaries are determined by the ratio of the principal amounts of their several

tax holdings to the total principal amount against the land, and are also governed by their respective priorities as determined by the court.

Returning to Sec. 45, respondents invoke Sec's 6 and 7, Art. X, and subsection 23 of Sec. 53, Art. IV of the State Constitution. The first two of these prohibit the exemption of real and personal property from taxation except that of the State, counties and other municipal corporations, and cemeteries. The third forbids the enactment of any local or special law of like nature. While we do not uphold respondents' contention in its entirety, we agree the interests of all taxing authorities as to *all* taxes due them cannot be exempted. The provisions of Sec. 2(d) and 2(e) show that some "taxing authorities" may own special tax bills, and private tax bill holders may own general tax liens (as where tax certificates are sold.) But under Sec. 27 land is sold to the Land Trust *only* for the total amount of the delinquent *general* taxes thereon. It follows that only the owners of those general tax liens can be beneficiaries in that land, all special liens having been foreclosed and cut out. In fact, Sec. 23 requires that the suit be dismissed in that event, as to the special tax lien holders. Of the general tax bill holders only the taxing *authorities* are protected by the exemption.

Paragraph 4 of Sec. 41 of the Act provides that the Land Trust may sell land held by it for cash or on terms of not less than 10% cash down, the balance to be paid in not less than 15 years, and the sale to be represented by a contract for a deed or by the purchaser's note, secured by mortgage or deed of trust on the land. Respondents assert a purchaser on a contract for a deed with deferred payments for 15 years might hold possession during all that time without paying taxes, being protected by the fact that the Land Trust was holding the legal title, and that it was tax exempt. We think not. While the Land Trust is a public corporation it would act in a quasi private capacity in such a transaction. The general rule in these circumstances is that the law regards the purchaser as the owner and the vendor as holding the legal title in trust for him. That rule was applied in Savings Trust Co. v. Skain, 345 Mo. 46, 53-5, 131 S. W. (2d) 566, 570-1 (1-5), where the vendor was a statutory receiver. It was also applied in State ex rel. St. Louis v. Baumann, 348 Mo. 164, 168, 153 S. W. (2d) 31, where the city held a matured certificate of purchase of land foreclosed for delinquent taxes. In our opinion respondents' contention here is incorrect.

This disposes of all the assignments bearing on the validity and constitutionality of the 1943 Act except the first one, which we reserved. That was the contention that the Act violates Sec. 28, Art. IV of the State Constitution because it contains more than one subject. We have concluded that it does not. From the beginning to the end our delinquent land tax legislation has provided methods whereby the taxing authorities may acquire title to

land not bringing the full amount of taxes, by forfeiture or purchase at the sale. Municipal legislation has been approved and enforced which fixed the priorities of tax liens. For many years we have provided for tax foreclosure by judicial proceedings. All these are germane to the general subject. That is enough. Edwards v. Business Men's Assn., 350 Mo. 666, 685, 168 S. W. (2d) 82, 92(17).

There remain two other points. Sec. 51 of the Act provides that if any section, subsection, sentence, clause or phrase in the Act be held unconstitutional or invalid, the remainder shall not be affected, the Legislature declaring it would have passed the rest of it anyhow. Sec. 52 provides that all laws or parts of laws so far as they are in conflict with the Act, are "hereby repealed." Respondents say neither of these provisions is valid. The objection made to Sec. 51 has been upheld, at least in part. State ex rel. Dawson v. Falkenhainer, 321 Mo. 1042, 1046, 15 S. W. (2d) 342, 343(4). The general repealer clause in Sec. 52 is not invalid, but affects only statutes which are in conflict with the Act. Nichols v. Hobbs (Mo. Div. 2), 197 S. W. 258, 259(2).

Respondents' last assignment is that the Act is invalid and unworkable under the Soldiers' and Sailors' Relief Act, 50 U. S. C. A., p. 172, 229, sec. 560. Subsections 1 and 2 thereof, amended October 6, 1942, deal with the sale of real estate used for dwelling, professional, business, or agricultural purposes, and owned by service men or their dependents at the commencement of their periods of service and still so occupied by such dependents, or employees. The sections forbid the institution of a proceeding for the collection of unpaid taxes on such real estate, or a sale thereof, except upon leave of court upon application made by the tax collector. The court may stay the proceedings until six months after the termination of the owner's period of service. Most certainly, by its very terms, the Federal Act does not invalidate the instant Act; nor do we think the Federal Act is unworkable.

For the reasons given in this opinion, the judgment is reversed and the cause remanded with directions to enter a decree in accordance with this opinion. All concur, *Gantt* and *Tipton, JJ.*, concurring in result only.

PER CURIAM:—Respondents' counsel says the paragraph of our opinion under which marginal notes 2-4 appear, wholly misstates his position. He explains that he does not contend a real estate lien cannot be foreclosed in equity, even on service by publication when the defendant owner is a nonresident, absconding or unknown—this under a rule of necessity. But he maintains that such a proceeding must be addressed to *personal* defendants; and that they must be served with personal process if they reside or can be found in

the state. In other words, he concedes there may be such a suit quasi in rem, but denies that it is maintainable purely in rem.

He further asserts a tax deed or judicial decree in such a case would only convey a prima facie title, if any at all, thereby requiring a further suit addressed to personal defendants, to quiet the title. On these points he stresses King v. Mullins, 171 U. S. 404, 432, 43 L. Ed. 214, 225, 18 S. Ct. 925, 936; State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 1090(f), 298 S. W. 83, 88(9); and refers to many other decisions from this and other jurisdictions cited in his original brief, which he says we ignored in the opinion.

Counsel has seen fit to raise thirty odd constitutional questions in this case, challenging the validity of nearly all the 52 sections of the "Land Tax Collection Act." There are more than 290 citations of authority in the briefs on both sides. Tax laws in all jurisdictions are of statutory creation, and differ widely. We attempted to cover all of respondents' assignments in the opinion, as fully as was possible considering the great number of points presented, and are unwilling to reopen the case, or to discuss extensively the questions already disposed of. However, a word about the two decisions, supra, again invoked by appellants.

The King-Mullins case, supra, was a collateral attack on a tax title to land in West Virginia, which had been forfeited to the State for nondeclaration for tax assessment and nonpayment of delinquent taxes. Under state statutes the land was thereafter sold by the State for the benefit of the school fund in a court proceeding to which all known claimants were made parties and brought in by personal service if found in the county, or by publication if not. The tax title was upheld because of that proceeding. But we do not construe the decision as holding it was essential to due process that the proceeding be in personam and based on personal service as far as possible, though it so happened in that case. At any rate, all the United States Supreme Court decisions to the contrary, cited in marginal note 6 of our opinion, were later cases except one; and of these, the Longyear case was in equity. Counsel ignores these decisions in his motion and suggestions, save the Leigh case, which he says contains obiter dicta. We do not think so. It has been cited and followed several times by the same court.

As to the Gott case from this state. It involved the conclusiveness of a statutory judgment of a probate court granting letters of administration. The decision held a judgment in rem *is* binding on the whole world as to the *res*—that being, in the present case, the delinquent land and every interest in the title thereto. True, the opinion further said such a judgment is not res judicata as to its inducing conclusions of fact, when the same facts are later in issue in a collateral action, except as to those who had made themselves parties to the original proceeding in a personal sense. But the decision limited that

statement to subsequent actions *not affecting the res.* Here, a subsequent collateral action assailing a tax title plainly would affect the res. Its very purpose would be to set aside the title conveyed at the tax foreclosure sale. In principle the Gott case, 317 Mo. l. c. 1091(i), 298 S. W. l. c. 89(i), held this could not be done. It ruled the judgment of a probate court appointing an administrator would later be collaterally unassailable when the issue was on his *legal status,* as in ejectment where the title to land was founded on his administrator's deed.

Respondents are mistaken in contending the prosecution of pure actions in rem is unprecedented in Missouri and would deny due process. Aside from the early tax collection statutes cited in marginal note 7 of the opinion, we had similar statutes in steamboat days authorizing a procedure resembling that in Admiralty, and directed solely against the boat. R. S. 1835, sec. 3, p. 102; Sec. 5094, R. S. 1899. Interesting cases thereunder may be found in 40 Mo. Rep. and earlier volumes. These statutes ran through successive revisions until repealed by Laws Mo. 1909, p. 128. We still have a few statutes of like nature, as in Chapter 132, entitled "Lost and Unclaimed Property", and Chapter 136, entitled "Salvage." It may be asserted these procedures are justified only by necessity. But the same can be affirmed of proceedings for the collection of taxes. In fact, the King-Mullins case cited by respondents declares it is a matter of "imperative necessity." It is a reproach on the law to say judgments for the foreclosure of taxes are only "prima facie" valid; or are only of slight or negligible validity, and that another suit must be brought to validate them. Why the lost motion, delay and duplicated expense? We have reread the designated pages of respondents' brief as requested. All the Missouri cases there cited deal with taxing statutes since 1877, requiring the action to be under the Code as in other cases. The learned trial court doubtless relied on those decisions, culminating in Black v. Banks, supra, 327 Mo. l. c. 345, 37 S. W. (2d) l. c. 596(1), which we overruled or limited in our opinion.

One further word about the holding in the opinion with respect to court orders in the nature of a writ of assistance. Respondents contend again that the Legislature constitutionally cannot authorize the issuance of the writ against persons in possession unless they were named as parties to the suit and personally served with summons. Respondents' view is that otherwise the possessory rights of such persons would not and could not be affected by the action.

In an ultimate or indirect sense a proceeding in rem makes all who have an interest in the title to the property parties to the proceeding—not personally, but insofar as they are bound by the judgment as respects the res. To the extent that their claims to the right of possession are based on their interests in the title, the former would stand or fall with the latter. We think such parties cannot resist the writ

138

merely because they have not been made personal defendants. Whether that would apply to mere tenants or others similarly interested, we are not deciding. We stated in the opinion that we would not attempt to apply the provision in Sec. 27 of the Act to specific situations. Neither is it our province to strike down the Act merely because of the possible harshness of some of its provisions in some circumstances. That is a legislative function. The question with us is only one of legislative power.

The motion for rehearing is overruled. All concur.