James HOGAN et al., Appellants,

v.

KANSAS CITY, Missouri, a Municipal
Corporation, Respondent.

No. KCD 26417.

Missouri Court of Appeals,
Kansas City District.

Dec. 2, 1974.

Charles C. Shafer, Jr., A. Howard Chamberlin, Kansas City, for appellants.

Aaron A. Wilson, City Counselor, L. B. Saunders, Assoc. City Counselor, Kansas City, for respondent.

Before DIXON, C. J., and SHANGLER, WASSERSTROM and TURNAGE, JJ.

WASSERSTROM, Judge.

In this class action, plaintiffs sue on behalf of all Fire Fighters of the defendant City for a declaration of their rights concerning holiday compensation allegedly due and unpaid for the period May 30, 1957, to February 14, 1966. Both sides moved for summary judgment. The trial court filed a memorandum opinion and thereafter entered judgment, denying entitlement by plaintiffs to the additional holidays claimed by them.

The three respects in which plaintiffs deem that the Fire Fighters were wrongfully disentitled to holidays are the following: 1) election days; 2) council declared special holidays; and 3) the "in lieu" days designated as holidays in the place of general holidays which fell on Saturday or Sunday. Plaintiffs claim that the rulings of the trial court excluding them from these holiday benefits and treating Fire Fighters different from other city employees were error. They also claim that the trial court erred in failing to grant them oral argument on their motion to dismiss.

## I.

### Election Day Holidays

The City Ordinances between May 27, 1957, and June 4, 1965, provided that State, County and City primary and general elections should be deemed additional holidays "for employees who work five or more calendar days per week." The issue on this phase of the case is whether the Kansas City Fire Fighters qualify under the quoted phrase.

An understanding of this question requires a rather detailed description of the working arrangements adopted for the Kansas City Fire Fighting Department. The employees are divided into three shifts, each of which has a 24 hour "work-

ing shift," followed by a 24 hour "stand-by shift," followed, in turn, by 24 hours completely free. A complete rotation of shifts is completed by a three week cycle. If the shifts are designated respectively as shifts A, B, and C, the distribution of work shifts is well illustrated by the following table:

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| First Week | A | B | C | A | B | C | A |
| Second Week | B | C | A | B | C | A | B |
| Third Week | C | A | B | C | A | B | C |

Each working shift begins at 7:00 A.M. and concludes the following 7:00 A.M. The distribution of working time by hours in each calendar day for each of the three weeks of the complete cycle, as well as stand-by time (designated by "SB"), is shown in the following table:

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|---|
| **First Week** | | | | | | | |
| 7 AM—12 PM | 17 | SB |  | 17 | SB |  | 17 |
| 12 PM—7 AM |  | 7 | SB |  | 7 | SB |  |
| Total Station Hours | 17 | 7 | — | 17 | 7 | — | 17 |
| Total Stand-By Hours | — | 17 | 7 | — | 17 | 7 | — |
| **Second Week** | | | | | | | |
| 7 AM—12 PM | SB |  | 17 | SB |  | 17 | SB |
| 12 PM—7 AM | 7 | SB |  | 7 | SB |  | 7 |
| Total Station Hours | 7 | — | 17 | 7 | — | 17 | 7 |
| Total Stand-By Hours | 17 | 7 | — | 17 | 7 | — | 17 |
| **Third Week** | | | | | | | |
| 7 AM—12 PM |  | 17 | SB |  | 17 | SB |  |
| 12 PM—7 AM | SB |  | 7 | SB |  | 7 | SB |
| Total Station Hours | — | 17 | 7 | — | 17 | 7 | — |
| Total Stand-By Hours | 7 | — | 17 | 7 | — | 17 | 7 |

An examination of the table immediately above discloses that the Fire Fighters did not work "5 or more calendar days per week" if the only hours to be counted are those during the work shift. The term "per week" has been interpreted to mean that the required performance must occur in each and every week. Werner v. Republic Yeast Corporation, 264 A.D. 908, 35 N.Y.S.2d 812 (1942). If this definition be applied, then the Fire Fighters did not qualify because they work only four days during the third week of the work cycle. Even if the more generous and more appealing approach be adopted of averaging the number of days between the three weeks, still the Fire Fighters do not qualify. This is for the reason that they work 5 days exactly in each of the first two weeks of the cycle, but work only four days in the third week. This works out to an average of 4⅔ days per week, which,

of course, is less than the ordinance requirement.

In order for the Fire Fighters to qualify for election day holidays, therefore, they must establish a right to include as part of the computation their stand-by time. Their argument that stand-by time should be included seems contradictory to the definition of the Administrative Code of Kansas City, Sections 221 and 222, which provide that "[t]he working day of an employee shall be a 24-hour shift beginning at 7:00 o'clock a. m. on the day assigned and every third day thereafter." Wholly aside from that, however, this stand-by time does not qualify as working hours.

■ A closely analogous problem occurs under the Federal Fair Labor Standards Act, in connection with computation of hours worked for the purpose of overtime compensation. In a wide variety of situations, employees have claimed that waiting time, on-call time or stand-by time should be deemed as hours worked. A comprehensive review of the cases dealing with that situation have been collected in an annotation, "Call or Waiting Time as Working Time Within the Minimum Wage and Overtime Provisions of the Fair Labor Standards Act", 3 A.L.R.Fed. 675. The legal principle which has been developed by the courts, and which is summarized in that annotation, is that the solution depends on the particular circumstances of each individual case. The factors to be considered include whether or not the employee is required to remain on the employer's premises or at a place designated by the employer; the sufficiency of the waiting time for use by the employee for his own personal matters; the degree to which the employee is free to engage in personal matters; and whether the waiting time is predominantly for the benefit of the employer or the employee.

■ Applying those guidelines here, the stand-by time cannot be considered as part of the working hours. The Fire Fighters on the stand-by shift are not required to be in any given place and are even free to leave the city provided they give notice as to where they will be. The record shows that it has become common practice among the Kansas City Fire Fighters to accept outside jobs during their stand-by period. Under somewhat similar circumstances, the courts have held that comparable stand-by time is not compensable working hours. Super-Cold Southwest Co. v. McBride, 124 F.2d 90 (5th Cir. 1942); Dumas v. King, 157 F.2d 463 (8th Cir. 1946); Thompson v. Loring Oil Co., 50 F.Supp. 213 (D.C.La. 1943); Pilkenton v. Appalachian Regional Hospitals, Inc., 336 F.Supp. 334 (D.C.Va. 1971). See also Cochrun v. County of San Bernardino, 229 Cal.App.2d 362, 40 Cal. Rptr. 298 (1964), in which it was held that an off-duty day during which Fire Fighters were subject to emergency call is not to be considered a day of active duty.

Authorities cited by the plaintiffs have been considered but they are not in point. The ruling of the trial court with respect to the issue of election day holidays is not clearly erroneous and is therefore affirmed. Rule 73.01(d), V.A.M.R.

*II.*

*Council Declared Holidays*

During the period 1957 to 1965, the Administrative Code of Kansas City, Missouri, provided that employees who worked five or more calendar days per week should be entitled to election days as holidays and that "such employees" should also be entitled to any other day which should by resolution of the City Council be declared to be a holiday. It will be observed that during the period mentioned, council declared holidays stood on exactly the same footing as election days and did not apply to any employee working less than five calendar days per week. For reasons already discussed under Section I of this opinion, this requirement disentitled the Fire Fighters to any council declared holidays.

However, on June 4, 1965, the Administrative Code was amended by eliminating election days as holidays and also eliminating the requirement that an employee work five or more days per week before being entitled to a council declared holiday. Consequently, under this amended provision which remained in effect until February 14, 1966, the Fire Fighters were entitled to council declared holidays. Unfortunately for them, no special holidays were declared by the council during this period and, therefore, no additional holiday compensation comes to them by virtue of this amendment.

Under the next amendment which was adopted February 14, 1966, Fire Fighters were specifically exempted from the general holiday provisions and a separate provision was made for them providing that no days other than those eight specifically listed "shall be considered holidays for members of the fire fighting service unless so specifically established by ordinance or resolution of the City Council." Plaintiffs admit that by virtue of this amendment they are not and have not been entitled to any council declared holidays from and after February 14, 1966.

Accordingly, there are no council declared holidays of which the Kansas City Fire Fighters have been wrongfully deprived.

### III.

### "In Lieu" Holidays

This is the most difficult of the issues in this case of which to take hold and treat understandably. The discussion of this problem must begin by stating that during the entire period to which this litigation refers, the Administrative Code listed eight specific paid holidays which were to be recognized for the benefit of all city employees: New Year's Day; George Washington's Birthday; Memorial Day; Independence Day; Labor Day; Veteran's Day; Thanksgiving Day; and Christmas Day. Then, with further reference to these eight specific holidays, the Code provided what should be done if one of those holidays should fall on a Saturday or Sunday; but these latter provisions varied according to various amendments adopted during the period.

The original provision in effect at the beginning of this period first dealt with election days and council declared holidays, both of which were to be for the benefit of only employees employed for five or more calendar days per week. Then Section 274 of the then Code further provided:

"When a holiday falls on Sunday or on such employee's nonworking day regularly scheduled in lieu of Sunday, the following day shall be a holiday for such employee. Employees required to work on a holiday shall be given compensatory time off or, upon approval by the City Manager, compensated in money for the time worked on the holiday."

This provision was amended on February 17, 1964, to read:

"When a holiday falls on a Saturday or Sunday, or on an employee's nonworking day regularly scheduled in lieu of Saturday or Sunday, the preceding Friday or the following Monday, as determined administratively by authority of the City Manager, shall be a holiday for all city employees. Employees required to work on a holiday shall be given compensatory time off or, upon approval by the City Manager, compensated in money for the time worked on the holiday."

This provision was again amended on June 4, 1965, to provide:

"When a holiday falls on a Saturday or Sunday, or on an employee's nonworking day regularly scheduled in lieu of Saturday or Sunday, the preceding or the following regular work day, as determined administratively by authority of the city manager, shall be a holiday for all city employees. Employees required to work on a holiday shall be given com-

pensatory time off or, upon approval of the city manager, compensated in money for the time worked on the holiday."

Finally, on February 14, 1966, the Administrative Code was drastically amended so as to eliminate members of the Fire Fighting Service from the general provisions governing holidays and were placed under special provisions pertaining to themselves alone. Plaintiffs admit that since the 1966 amendment they have not been wrongfully disentitled to any "in lieu" holidays. They do strenuously argue, however, that they were wrongfully discriminated against prior to February, 1966.

What the defendant City actually did during the disputed period when a specified holiday fell on a Saturday or Sunday, was to give compensatory time off to the Fire Fighters actually working a duty shift on the holiday. No further holiday provision was made for the off-duty shift, and the only ones who received any holiday pay on the stand-by shift were those who were actually called in for emergency duty. Plaintiffs argue that this treatment was unjustified and that both the stand-by shift and the off-duty shift should be entitled to compensatory time off or additional pay.

■ The key question on this phase of the case is whether the day of the holiday for the Fire Fighters on the two nonworking shifts can be considered a "nonworking day regularly scheduled in lieu of Sunday" (under the original Administrative Code) or "regularly scheduled in lieu of Saturday or Sunday" (under the Code as it read from February 17, 1964, until February 14, 1966). Despite some variation in terminology introduced by the various amendments, the defendant City must prevail if it is correct in its underlying contention, as stated in its brief, that "firefighters, while two days of every three were nonworking days for them, had no nonworking days *regularly scheduled in lieu of Saturdays or Sundays*." (Emphasis by the defendant). In response, plaintiffs argue that "[o]nce a Fire Fighter starts it [the three shift

schedule], he is never off of it—and so all days off other than Saturdays or Sundays become his regular days off 'in lieu.' "

Of the two positions, that of the defendant is the more reasonable. It properly asks recognition of the indisputable fact that the Fire Fighters have a completely different situation from that of other city employees. Those differences are recognized and different treatment is accorded for a variety of other purposes. For example, the Fire Fighters work a normal 56 hour week (Code Sections 221 and 222), whereas the general city employees work a 40 hour week (Code Section 215). Similarly different treatment is given to Fire Fighters from other city employees for the purpose of annual leave. General fulltime employees whose work week does not exceed five days receive annual leave at the rate of $\frac{5}{6}$ of one working day for each full month of service (10 days per year), and employees whose work week exceeds five days receive one working day per each full month of service (12 days per year). By way of contrast, Fire Fighters receive $\frac{7}{12}$ of an assigned 24 hour work day for each full month of service, or seven 24-hour working days per year.

A like differentiation is made for purposes of sick leave. Section 270 of the Administrative Code provides that employees in general (other than Fire Fighters and ambulance drivers) be allowed 10 days per year; while Section 270.010 provides Fire Fighters and ambulance chauffers $7\frac{1}{2}$ 24-hour days or shifts per year.

Still another like differentiation is made for purposes of vacation leave. Regular city employees receive one calendar week after six months of service, 2 calendar weeks after 1 year of service, 3 calendar weeks after 5 years of service and 4 calendar weeks after 15 years of service. Fire Fighters and ambulance drivers, however, have a different scale: those who have completed more than one year but less than five years receive seven working days for one year of service; those who have com-

pleted five, but less than 15 years receive eight working days for such year; and those who have completed 15 years receive nine working days for such year.

Notwithstanding these significant differences by the Fire Fighters as compared to other city employees for many purposes concerning terms of employment, plaintiffs nevertheless argue that with respect to "in lieu" holiday compensation the City Council intended to treat Firemen exactly the same as all other employees. In support of this position, they argue that the 1966 amendment to the Administrative Code, which recognized a sharp distinction between Fire Fighters and all other city employees for holiday purposes, constitutes in effect a concession that there was no differentiation for this purpose prior to February 14, 1966. It is true that a change in statute or ordinance is presumed to be for the purpose of effecting some purpose. However, that purpose need not necessarily be that of changing the existing law. Hambel v. Lowry, 264 Mo. 168, 174 S.W. 405 (1915). The purpose may well be to clarify the meaning of the previously existing law. 82 C.J.S. Statutes, § 384, p. 897. In this case an intention to clarify the law, rather than necessarily to change the existing law, can reasonably be inferred as a response by the City Council to this very litigation which was pending at the time the 1966 amendment was adopted.

Moreover, any implication which could be drawn in plaintiffs' favor from the 1966 amendment must be offset by two other canons of construction which point to an opposite result. One of these canons is that respectful weight must be accorded to the construction placed upon a statutory or ordinance provision by the administrative officials charged with the enforcement of that provision. State v. Cupples Station Light, Heat & Power Co., 283 Mo. 115, 223 S.W. 75 (banc 1920); Fleming v. Moore Brothers Realty Co., 363 Mo. 305, 251 S. W.2d 8 (1952); Three Rivers Junior College District v. Statler, 421 S.W.2d 235 (Mo. banc 1967); Foremost-McKesson, Inc. v. Davis, 488 S.W.2d 193 (Mo. banc 1972). Here the administrative construction was consistently contrary to that for which plaintiffs contend. Still further, the City Council is presumed to have known of that administrative construction and to have adopted it by the amendment to this section of the Code on June 4, 1965. Becker v. St. Francois County, 421 S.W.2d 779 (Mo.1967); Timmonds v. Kennish, 244 Mo. 318, 149 S.W. 652 (1912).

For the reasons stated, it cannot be held that the trial court was clearly erroneous in its ruling that plaintiffs are not entitled to the "in lieu" holidays.

## IV.

### Failure to Allow Oral Argument

When plaintiffs filed their amended motion for summary judgment, they concurrently requested oral argument before the trial court under the provisions of Local Rule 6(2), 16th Judicial Circuit, which provides:

"On the filing of suggestions in opposition by all parties entitled to file the same, or on expiration of the time for filing, whichever comes first, the matter shall be presented to the judge for consideration, and when the court rules on same, counsel for the parties shall be notified . . . any party may request oral argument on such a motion . . . but the granting or refusal of the same shall be a matter for the discretion of the court . . . ."

Plaintiffs assign as error the failure of the trial court to allow oral argument as requested by them.

The convincing answer to plaintiffs' complaint is that Local Rule 6(2) leaves this matter of oral argument within the broad discretion of the trial court. The failure of the trial court to have entered an order concerning the allowance or disal-

lowance of oral argument must be deemed in effect as a determination to disallow it. No abuse of discretion of any kind can be seen in this regard.

Affirmed.

All concur.