Stanton M. GLADDEN et al.,
Plaintiffs-Appellants,

v.

KANSAS CITY, Missouri, a Municipal
Corporation, Defendant-Respondent.

No. KCD 27320.

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

Motion for Rehearing and/or Transfer
Denied May 3, 1976.

Charles C. Shafer, Jr., H. Howard Chamberlin, Kansas City, for plaintiffs-appellants.

Aaron A. Wilson, City Atty., Carrol C. Kennett, Asst. City Atty., Kansas City, for defendant-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

This class action was brought in 1964 in two counts by Kansas City, Missouri firemen for recovery of alleged unpaid overtime. In 1966 the case was dismissed with prejudice but reinstated after appeal. *Gladden v. Kansas City,* 411 S.W.2d 228 (Mo.1967). On April 11, 1974 summary judgment was granted in favor of defend-

ant City of Kansas City. From that judgment, the plaintiff firemen appeal.

In count one, the firemen sought overtime pay in the amount of $809,113.38 plus interest, for the period October 8, 1956 to March 28, 1964. The claim is based on a construction of Sections 221 and 222 of the Administrative Code of the City then in effect. The relevant parts of the two sections are the same, and it is sufficient to set out parts of Section 221.

"The following salary schedules for positions in the Fire Fighting Group of the Fire Fighting Service are hereby adopted as the standard salary schedules for all such positions in the city service. * *

The normal working and on-duty hours for all positions listed in this section, excepting that of Fire Chief, shall average 56 hours per week.

In cases of emergency, the department head may require overtime work, and shall allow compensation for such overtime work, on the basis of a 56-hour week, at one and one-half times the daily or hourly equivalent of the rates of pay enumerated in this section.

All employees in positions listed in this section shall be separated by the department head into three groups, each group designated to work on one of three successive days and on each third day thereafter. The working day of an employee shall be a 24-hour shift beginning at 7:00 a. m. on the day assigned and every third day thereafter. During the first 24-hour day following the employee's assigned working day, he shall remain available for duty on a stand-by basis."

Relying on the clauses "and shall allow compensation for such overtime work, on the basis of a 56-hour week," the firemen claim they are entitled to overtime pay for all hours worked in excess of 56 hours in *any week*. The result is a claim to 4½ hours of unpaid wages every three weeks.

The Code establishes a specific work cycle for firemen. The firemen are on duty 24 hours and off duty the next 48 hours, resulting in a cycle which repeats itself every three weeks. In the first week, a fireman works 65 hours. In the second and third weeks, he works 55 and 48 hours, respectively. The fourth week begins another cycle. The *average* hours worked per week is 56, considering the Code-prescribed cycle as the period to be used to compute the average.

According to the firemen, however, the 56-hour average has no meaning at all except as a standard for purposes of computing overtime. Thus, in week one of the three-week cycle, 9 of the 65 hours actually worked are overtime, to be computed at the overtime rate of time and one-half. That is the equivalent of 13½ hours straight time for which the firemen were not paid. The firemen generously admit that in weeks two and three they are overpaid for a total of 9 hours. But this 9 hours is overpayment at straight time. The difference between straight time overpayment (9 hours) and overtime underpayment (13½ hours) is 4½ hours, the amount for each three-week cycle for which the firemen bring the action in count one to recover unpaid overtime.

■ Firemen's first allegation of error is that the trial court's memorandum indicates that the basis for a denial of recovery on count one rests on the assumption overtime must be computed on a daily basis (time over a 24-hour work shift), rather than on the basis of a seven-day week. The firemen insist, without citing any authority, that "overtime is, traditionally and by every known decision, computed on a weekly basis." That assertion is incorrect. In arriving at a definition of overtime for a case before it, the United States Supreme Court said, "Sometimes it is used to denote work after regular hours, sometimes work after hours fixed by contract at less than the statutory maximum hours and sometimes hours outside of a specified clock pattern without regard to whether previous work has been done. . . . " For that case, overtime was defined as "that extra pay for work because of previous work for a specified number of hours in the work week *or workday*" (emphasis added). *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 68

S.Ct. 1186, 92 L.Ed. 1502 (1948). The trial court was not bound to compute overtime on the basis of a seven-day week.

■ Firemen contend that their theory of overtime computation flows from the simple meaning of the words in the Code. To the contrary, the Code plainly sets out regular work schedules and overtime provisions irreconcilably at variance with the firemen's convoluted construction. The 24-hour on, 48-hour off schedule is the regular schedule established by the Code. The fact that a 65-hour week occurs once every three weeks is a fact structured into the regularly prescribed schedule. In this context, the most reasonable meaning to ascribe to overtime is time worked beyond the regularly established working hours, i. e., beyond the 24-hour shift. (For a similar construction of the meaning of overtime, see *Prosecutor's Det. & Inv., Etc. v. Hudson Cty. Bd., Etc.,* 130 N.J.Super. 30, 324 A.2d 897 (1974); *Taylor v. City of Cleveland,* 87 Ohio App. 132, 93 N.E.2d 594 (1950), and *Goodman v. Moss,* 43 N.Y.S.2d 381 (Sup.Ct.1943), mod., 269 App.Div. 839, 56 N.Y.S.2d 534 (App.Div. 1945). Additionally, the Code explicitly says the *normal* hours for firemen, excepting the Fire Chief, shall *average* 56 hours. If normal hours *average* 56 hours per week, the plain implication is that in some weeks the normal hours add up to less than 56 hours and in other weeks it is normal to exceed 56 hours. That, of course, is the result of the work cycle established by the Code's shift pattern.

The paragraph the firemen so heavily rely on begins, "In cases of emergency, the department head may require overtime work . . . ." In this context, reference to a 56-hour week in a following clause in the same sentence—a week which in the firemen's schedule is non-existent except as an average—surely refers to the cycle in which hours per week average 56.

■ This construction of the Code is consistent with the principle that provisions of a legislative enactment should be construed together and harmonized whenever possible. *Spitcaufsky v. Hatten,* 353 Mo. 94, 182 S.W.2d 86, 160 A.L.R. 990 (banc

1944); *State ex rel. McCubbin v. McMillian,* 349 S.W.2d 453 (Mo.App.1961). Also, city administrators have construed the Code contrary to the firemen's interpretation, and respectful weight should be given a construction of provisions of an ordinance by administrative officials. *City of Joplin v. Joplin Water Works Company,* 386 S.W.2d 369 (Mo.1965); *Hogan v. Kansas City,* 516 S.W.2d 805 (Mo.App.1974). It is clear that it was not intended by Sections 221 and 222 that overtime be computed in the manner the firemen contend.

Count two is predicated upon a 1964 change in the Code. The Code as amended reads, in pertinent part:

Section 213. *Overtime and compensatory time.* All overtime or arrangements for overtime shall be approved in advance by the department head and the city manager. Pay for overtime to any employee shall be at the straight hourly equivalent rate for his position classification, for all hours worked in excess of the stipulated standard work week.

Section 215. *Working hours.* Regular working hours for all full-time employees shall be forty (40) hours each week, which shall be the standard unless otherwise provided by departmental regulation approved by the city manager; all members of the fire-fighting service shall work a 56-hour week, except for the fire chief, who shall work a 40-hour week.

The construction urged in support of count two is that "stipulated standard work week" can mean only a 40-hour week for all employees, including firemen. "Week" is singular, precluding there being more than one standard work week for firemen. The result contended for is that the firemen are due full overtime pay for all hours worked in excess of 40 hours per week under the 1964 Code change.

■■ As to count two, firemen's insistence that there is only one standard work week ignores the fact that in legislative enactments, the singular may be taken as including the plural. *In re Dean's Estate,* 350 Mo. 494, 166 S.W.2d 529 (banc 1942). Their construction also requires reading

Sec. 215, which specifies a 56-hour week for firemen, as providing that firemen must work an average of 16 hours overtime per week. Yet Sec. 213 plainly says that all overtime shall be approved in advance by the department head and the city manager. Construing the two sections together, it is plain that for all employees there is a standard work week, but for firemen that standard is 56 hours rather than 40 hours.

This court in *Hogan v. Kansas City,* supra, clearly stated that firemen "have a completely different situation from that of other city employees." In that case, variances in fringe benefits (hours worked, annual leave, sick leave and vacation leave) were cited as illustrative of the differences. It was held that there was a difference in the way "in lieu" holiday provisions applied to firemen and other city employees. In this case also, there are clear differences in the applicability of "standard work week" to the situation of firemen and the situation of other city employees. The firemen are owed no overtime for weeks in which they worked over 40 hours pursuant to their normal schedule.

The reasoning in this case is in accord with cases from other jurisdictions involving analogous claims to alleged unpaid overtime. *Satterley v. City of Flint,* 373 Mich. 102, 128 N.W.2d 508 (1964) and *Taylor v. City of Cleveland,* supra.

The firemen also allege that the trial court erred in considering acquiescence a valid defense, especially to count two since it was not pleaded as a defense to that count. The trial court having correctly construed the Code and reached the correct result, its error, if any, in the reasons assigned for the result reached would be immaterial. It is thus unnecessary to consider this second assignment of error. *Commercial Union Insurance Co. v. Farmers Mut. Fire Ins. Co.,* 457 S.W.2d 224 (Mo.App.1970); *Dill v. Poindexter Tile Company,* 451 S.W.2d 365 (Mo.App.1970). The summary judgment in favor of defendant City is affirmed.

All concur.