Dear Mr. Miller:
This opinion is in response to your question asking:
 Whether or not money derived under section 455.200, et seq. RSMo may be used to defer costs of private housing along with medical and personal items for battered spouses and children during the period of time in which they are away from their homes.
Sections 455.200 to 455.230, RSMo Supp. 1983,[1] originated as Sections 2 to 8 of H.B. 1069, 1982 Missouri Laws 374, 376-378. Section 455.205.1 authorizes the governing body of each county and the City of St. Louis to impose, by order or ordinance, a fee of five dollars ($5.00) on the issuance of a marriage license and a fee of ten dollars ($10.00) upon the entry of a decree of dissolution of marriage by a circuit court under the provisions of Section 452.305, RSMo, to be paid by the party who filed the dissolution petition.[2] The recorder of deeds collects the marriage license fees, and the clerk of the court collects the dissolution decree fees. Section 455.205.2. These officials file a verified, monthly report of the fees so collected with the "county court". Section 455.205.3. Upon the filing of this report, the recorder of deeds and the clerk of the circuit court pay the fees over to the county treasurer who deposits the fees into a special fund in the county treasury "to be expended only to provide financial assistance to shelters for victims of domestic violence as provided in Sections 455.200 to 455.230." Section 455.205.3 (emphasis added).
Section 455.210 authorizes the governing body of the county or the City of St. Louis to designate, by order or ordinance, an appropriate board, commission, agency, or other body of the county or city as the authority to administer the allocation and distribution of the funds to shelters for victims of domestic violence.
Section 455.215 establishes how shelters for victims of domestic violence may apply to the designated authority for funds from the "domestic violence fund" in the county or city treasury. One of the requirements is that the shelter show evidence that it is a Missouri, non-profit corporation. Sections 455.215.1(1) and455.220.1(1).
Section 455.200(4) defines the term "shelter for victims of domestic violence" as:
 [A] facility established for the purpose of providing temporary residential service or facilities to family or household members who are victims of domestic violence.
Section 455.200(3) defines the term "family or household member" as:
 [A] spouse, a former spouse, person living with another person whether or not as spouses, parent, or other adult person related by consanguinity or affinity, who is residing or has resided with the person committing the domestic violence and dependents of such persons;
Section 455.200(2) defines the term "domestic violence" as:
 [A]ttempting to cause or causing bodily injury to a family or household member, or placing a family or household member by threat of force in fear of imminent physical harm;
The legal issues presented by your question are: (1) Whether a Missouri, not-for-profit corporation purporting to act as a shelter for victims of domestic violence may establish a network of "facilities"[3] (sometimes referred to as "safe homes") in various private residences[4] throughout the county or city in question for the purpose of providing temporary residential services and facilities; and (2) Whether the provision of limited medical care and "personal items" to family or household members is within the scope of the term "temporary residential service or facilities" in Section 455.200(4).
 I. Network of Safe Homes
In State ex rel. Williams v. Marsh, 626 S.W.2d 223, 226-227
(Mo. banc 1982), the court indicated that the Adult Abuse Act, Sections 455.010 to 455.085, RSMo Supp. 1980, was part of a national trend to legislate on the subject of remedies for domestic violence. Likewise, H.B. 1069 is a part of a nationwide trend to enact funding mechanisms for domestic violence shelters through marriage license fees or marriage dissolution fees. See, e.g.,
Ala. Code Section 30-6-11 (1983 Repl. Vol.) ($5.00 marriage license fee); Ariz. Rev. Stat. Ann. Sections 11-554.A.16 and 25.311.01.E (Supp. 1983-1984) (80% of $10.00 marriage license fee and $6.00 per party dissolution fee, respectively); Cal. Government Code Sections 26840.7 and 26840.8 (West's Supp. 1984) ($13.00 marriage license fee and $13.00 marriage authorization fee, respectively); Fla. Stat. Ann. Section 741.01(2) (West's Supp. 1983) ($10.00 marriage license fee); Idaho Code Section 39-5213
(Supp. 1983) ($15.00 marriage license fee); Ill. Ann. Stat. ch. 25, Section 27.2(1)(d) and ch. 53, paragraph 35, Section 18 (Smith-Hurd Supp. 1983-1984) ($5.00 dissolution fee in certain counties and $10.00 marriage license fee, respectively)[5]; Ind. Code Ann. Section 4-23-17.5-4(b) (Burns 1982 Repl. Vol.) ($10.00 dissolution fee); Kan. Stat. Ann. Section 23-108 and 23.110 (1981) (56% of a $10.00 marriage license fee); Ky. Rev. Stat. Section209.160 (1982 Repl. Vol.) ($10.00 of $14.00 marriage license fee); Md. Ann. Code Art. 62, Section 14(b) (1983 Repl. Vol.) (marriage license fee of up to $15.00 under county group plan); Mich. Comp. Laws Ann. Section 551.103(2) (Supp. 1983-1984) ($15.00 of $20.00 marriage license fee to be used for "family counseling services, which shall include counseling for domestic violence and child abuse."); Minn. Stat. Ann. Section 357.021.2a (Supp. 1984) ($35.00 of $55.00 marriage dissolution fee to be used for emergency shelter and support services for battered women and administering displaced homemaker programs); Mont. Code Ann. Section 40-2-405(1) (1983) (revenue from marriage license fees and fees collected for filing a declaration of marriage without solemnization is the primary source of funding); Nev. Rev. Stat. Section 122.060.4 (1983) ($5.00 marriage license fee); N.H. Rev. Stat. Ann. Section457:29 (1983 Repl. Ed.) ($13.00 marriage license fee); N.J. Stat. Ann. Section 37:1-12.1 (Supp. 1983-1984) ($5.00 marriage license fee); N.D. Cent. Code Section 14-03-22 (1981 Repl. Vol.) ($19.00 of $25.00 marriage license fee); Ohio Rev. Code Ann. Section 106.045(1) (1983 Repl. Part) ($20.00 marriage license fee); S.D. Codified Laws Section 25-1-10 (Supp. 1983) ($15.00 of $25.00 marriage license fee).
In comparing Missouri's legislative enactment with the domestic violence shelter statutes of other states, two propositions are clear: First, Missouri did not enact minimum standards or licensing requirements for the facilities, as have other states, e.g., Ala. Code Sections 30-6-1(4) and 30-6-3(a)(5) (1983 Repl. Vol.) (Prosecuting Attorneys' Offices make annual compliance evaluations). Missouri's lack of minimum standards for facilities shows that there are no compliance or licensing standards serving as impediments to private residences acting as "facilities" for purposes of Section 455.200(4). Second, the services that can be funded with marriage license fees and dissolution fees under the Missouri statutes are relatively limited, i.e., the provision of temporary residential services and facilities. Sections 455.200(4) and 455.220.1(4). Not included in this list of services are legal advocacy services, telephone "hotline" services, psychological and employment counseling services, and child care services, as is provided for in the enactments of other states, e.g., Cal. Welf. Inst. Code Sections18294 and 18295 (West's Supp. 1984); Mont. Code Ann. Section 402-404 (1983). Obviously, temporary residential services and facilities can be provided from a private residence. The lack of compliance standards and the emphasis on residential services show that private residences may act as "facilities" for purposes of Section 455.200(4).
 II. Medical and Personal Items
As previously stated, the services that can be provided under the Missouri domestic violence shelter statutes are limited to temporary residential services and facilities. In Stewart v.Barber, 182 Misc. 91, 43 N.Y.S.2d 560, 563 (1943), it was indicated that the use of part of a house as a physician's, dentist's, or lawyer's office destroys the character of the home as a private dwelling and such is not used exclusively for residential purposes. Thus, one could not establish a "doctor's office" with domestic violence shelter fund moneys, for such is not a residential service or facility. However, most residences have a medicine cabinet or other storage area for nonprescription medical items, e.g., bandages, aspirin, etc. The provision of such nonprescription medical items is incident to the provision of residential services or facilities and may be provided with domestic violence shelter fund moneys.
The question presented also asks whether the domestic violence shelter fund moneys may be used to provide "personal items" to victims of domestic violence. The test to be applied is whether the personal items are provided incident to the residential services or facilities provided by the shelter. Personal items provided incident to the shelter's residential services or facilities may be financed with domestic violence shelter fund moneys, e.g., toothbrushes, cosmetics, etc. Items not incident to the shelter's residential services or facilities may not be provided with domestic violence shelter fund moneys, e.g., automobiles, airline tickets, etc.
CONCLUSION
It is the opinion of this office that a Missouri, not-for-profit corporation operating as a shelter for victims of domestic violence and receiving funds under Sections 455.200 to 455.230, RSMo Supp. 1983, may use such funds to establish a network of safe homes in private residences. Such funds may be used to provide medical and personal items if such are incident to the residential services and facilities provided by the shelter.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] All statutory references are to RSMo Supp. 1983, unless otherwise indicated.
[2] Article X, Section 22(a), Missouri Constitution, requires voter approval of these fees prior to their imposition. SeeRoberts v. McNary, 636 S.W.2d 332 (Mo. banc 1982).
[3] Section 455.200(4) defines the term "shelter for victims of domestic violence" as a single facility. In legislative enactments, the singular includes the plural. Gladden v. KansasCity, 536 S.W.2d 478, 480 (Mo.App. 1976). Therefore, the use of the singular word "facility" in the definition of the term "shelter for victims of domestic violence" does not preclude a shelter from having multiple facilities.
[4] As we read the words "private housing" in the question asked, hotels and motels are not within the scope of the question presented; rather, private housing, as we read that term in the question asked, refers only to private residences.
[5] But see Crocker v. Finley, Nos. 58056, 58062, and 58085, consolidated (Ill. February 1, 1984).